**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-7150

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ISAI ISAURO GARZA, a/k/a JESUS ISAURO GARZA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(April 20, 1993)

Before WISDOM, DUHÉ, Circuit Judges, and DOHERTY[*], District Judge.
WISDOM, Circuit Judge.

In this case, the defendant, Isai Isauro Garza, appeals his conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(A) for possession of 447 kilograms cocaine with the intent to distribute. He contends that the evidence was insufficient to sustain his conviction. Additionally, he contends that the trial court's admission of testimony concerning the computer listings of the Drug Enforcement Administration (DEA) constitutes reversible error.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Finally, he contends that he was denied effective assistance of counsel based on his lawyer's failure to object to the admission of the allegedly inadmissible testimony.  We hold that the evidence was sufficient to support the jury's verdict and we find no reversible error.  We affirm.

I.

In August 1991, a United States Boarder Patrol agent stopped Garza at the Falfurrias Checkpoint in Texas for a routine inspection.  Garza was driving his tractor trailer.  In response to questioning, Garza told the agent that he had come from Edinburg, Texas with a load of limes he was taking to Los Angeles.  The agent then asked to see a copy of Garza's bill of lading.  The bill of lading listed Los Angeles as the destination of the load.  The agent testified that Garza seemed nervous, his voice trembled, and his hand shook as he handed over the document.  Based on these observations, the agent asked Garza for permission to search his trailer.  Garza immediately granted permission.

The agent looked through a small ventilation hatch located behind the driver's door and spotted several burlap sacks on top of the lime boxes.  He asked Garza to move his truck to the secondary inspection area and to open the rear doors of the trailer. Garza complied.  As the agent crawled forward in the trailer on top of the lime boxes, he discovered additional burlap sacks stacked in between the boxes.  Cocaine was inside the sacks in the form of bricks.  Over the next half hour, with the help of a second boarder agent and a forklift, the two agents unloaded 447 kilograms of

cocaine from the truck, worth approximately fifteen million dollars.

A search of the cab of the truck turned up a package of blank bills of lading hidden beneath the carpeting on the floor of the cab and a second handwritten bill of lading giving the name of a non-existent buyer and falsely listing Houston as Garza's destination. The defendant admitted that he had purchased the package of bills of lading and that he had prepared the second, false bill of lading. In addition, Garza admitted to falsifying his logbook to reflect an inaccurate departure time.[2]

Garza was charged under 21 U.S.C. § 841(a)(1) and (b)(1)(A) with one count of possession of 447 kilograms of cocaine with intent to distribute. The case was tried to a jury for two days in December 1991. At trial Garza's counsel called a DEA special agent and asked him to identify any of the government witnesses whose names were listed in the DEA computer system.[3] The agent named one government witness and went on to name London Fruit, the lime supplier, and B & R Trucking, the company that provided Garza with the lime shipping job. On cross-examination, the government asked the agent if any additional persons involved in the Garza case appeared in the system. The agent testified that Garza's name appeared in the system in connection with a 5200 pound seizure of

_____

[2] Garza's log book listed his departure from the loading dock as 10:30 p.m. He admitted at trial that he departed from the loading dock at 9:00 p.m.

[3] The DEA system includes the names of all persons or entities that have been, or are suspected of having been, involved in prior drug trafficking schemes.

3

marijuana in 1990.  He also testified that approximately twenty of the names in Garza's address book, seized from his truck, also appeared in the system.  Garza's counsel did not object to the admission of the agent's testimony.[4]  The court, however, twice cautioned the jury that Garza was not on trial for the 1990 marijuana seizure.

The district court denied Garza's motion for a directed verdict at the close of the government's case and again at the close of evidence.  The jury returned a guilty verdict.  In March 1992, Garza was sentenced to 235 months confinement to be followed by a five year term of supervised release.  He also received a $1,000 fine and a $50 special assessment.

Garza appeals his conviction on three grounds.  First, he contends that the evidence was insufficient to support the jury's guilty verdict.  Next, he argues that the DEA agent's testimony on cross examination was improperly admitted and constitutes reversible error.  Finally, he argues that his trial counsel was constitutionally ineffective in failing to object to the agent's allegedly inadmissible testimony.

## II.

"The standard for review for sufficiency of evidence is whether any reasonable trier of fact could have found that the

---

[4]  At oral argument on appeal, Garza's counsel suggested, without citing the record, that trial counsel had made some form of objection to the admissibility of this evidence.  After reviewing the record carefully, we conclude that he is mistaken.  There is no such objection in the record.

evidence established guilt beyond a reasonable doubt."[5]  In reviewing a case for sufficiency of the evidence, reasonable inferences from the evidence will be construed in favor of the jury verdict.[6]  In addition, "determining the weight and credibility of the evidence is within the sole province of the jury".[7]  We "will not supplant the jury's determination of credibility with that of [our] own."[8]

Under 21 U.S.C. § 841(a)(1) and (b)(1)(A), the government must prove three elements beyond a reasonable doubt in order to convict Garza: (1) knowledge, (2) possession, and (3) intent to distribute.[9]  Garza contests only the knowledge element.

The knowledge element in a possession case can rarely be established by direct evidence.  Knowledge can be inferred from control of the vehicle in some cases; however, when the drugs are hidden, control over the vehicle alone is not sufficient to prove knowledge.[10] The general rule in this Circuit is that knowledge can

_____

[5]  United States v. Martinez, 975 F.2d 159, 160-61 (5th Cir. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1346 (1993) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979).

[6]  Id. at 161 (citing Glasser v. United States, 315 U.S. 60, 80 (1942)).

[7]  Id.

[8]  Id. (citations omitted).

[9]  United States v. Richards, 638 F.2d 765, 768 (5th Cir.), cert. denied, 454 U.S. 1097 (1981).

[10]  Control will suffice on its own if the drugs are clearly visible or readily accessible. United Sates v. Richardson, 848 F.2d 509, 513 (5th Cir. 1988).  In this case however, the drugs were in burlap sacks partially concealed in the trailer of the truck between the lime boxes and not readily accessible.

be inferred from control over the vehicle in which the drugs are hidden "if there exists other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge".[11]

Garza argues that because the drugs were hidden,[12] the government was required to show more than control of the vehicle. We agree. In addition, he contends that the government failed to bring forward sufficient "other circumstantial evidence" and consequently his conviction should not be sustained. We disagree.

At trial the government offered several pieces of evidence to support Garza's guilt. Specifically, this evidence includes Garza's nervousness, his control and ownership of the truck containing the cocaine, the large amount of cocaine, the false bill of lading, the falsified log book, the package of blank bills of lading, the gap in time between when Garza left the loading station with the truck and his actual departure time, and finally, the fact that Garza admittedly left his loaded truck unlocked and unattended for over an hour at a dark truck stop before departing for Los Angeles. For reasons discussed below, we do not consider the DEA Agent's testimony regarding the contents of its computer files in analyzing the sufficiency of the evidence.

First, Garza maintains that his alleged nervousness was

---

[11] United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990)).

[12] This is a close case. Although the drugs were not secreted in a hidden compartment, they were not in "plain view" or "readily accessible". Instead, the drugs were concealed in burlap sacks stacked in and behind the lime boxes.

improperly considered as evidence of guilty knowledge.[13]  In United States v. Diaz-Carreon, this Court held that nervousness, "[i]n the absence of facts which suggest that [the nervousness] ... derives from an underlying consciousness of criminal behavior ... is insufficient to support a finding of guilty knowledge".[14]  Applying this rule, in Diaz-Carreon, this Court held that inconsistent statements made to custom officials in addition to an implausible story constituted persuasive evidence of the defendant's consciousness of guilt; thus, the Court allowed nervousness to be considered as evidence of guilty knowledge.  Although the facts in the instant case are not identical with those in Diaz-Carreon, they do share some similarities.  Both cases contain evidence of an implausible explanation for suspicious circumstances.  When the false bill of lading was discovered hidden in Garza's truck, Garza stated that he had completed it to provide a substitute bill of lading for his trip when he realized he would be unable to acquire the form from the shipper.  According to Garza, he filled out the second bill of lading as practice.  He maintains that he had planned to telephone the shipper to determine if he had filled out the bill correctly and to see if the shipper wanted him to fill out the substitute because he had been unable to acquire one before he departed.  He maintains that he listed

_____

[13]  Garza contends that he was not nervous and backs this contention with the fact that he did not hesitate to consent to the search of his truck.  We are not retrying the case, however.  The agent testified that Garza was nervous and it was up to the jury to weigh his credibility against Garza's.

[14]  915 F.2d 951, 954 (5th Cir. 1990).

7

Houston as the final destination because that was the destination on the last delivery he had made. He offered no explanation for listing a non-existent buyer.

At trial, a representative for Amerifresh testified that he had placed an order for the limes with London Fruit. London Fruit was listed as the supplier on the first, original bill of lading. He stated that it was the policy of Amerifresh to substitute its name as supplier for fear its customers would deal directly with the real supplier, cutting Amerifresh out of future deals. The fruit shipping company's agents testimony corroborates Garza's belief that they wanted to alter the name of the fruit supplier on the bill for business reasons. Yet, his contention that he was "practicing" does not explain why the bill listed Houston and not Los Angeles as his destination or indeed why the bill of lading listed a non-existent buyer. Thus, his explanation is arguably implausible.

Although Garza made no inconsistent statements to the boarder agent, his arguably implausible explanation of the bill of lading in combination with his admission that he had falsified his log books opens the door to allowing his nervousness to be considered as evidence of guilty knowledge under the Diaz-Carreon standard.

Next, Garza contends that the presence of the second false bill of lading listing Houston and not Los Angeles as the final destination of the cargo does not constitute "other circumstantial evidence" sufficient to support the jury's finding of guilty knowledge. According to Garza, because he characterizes his

8

explanation of the second bill as "plausible", it cannot be used to infer guilty knowledge. This contention is unfounded.

At trial, the government argued that Garza had created the Houston bill of lading so that if stopped en route to Houston to deliver the drugs, he could offer a Houston bill of lading to avoid suspicion. The jury is the ultimate arbiter of witnesses' credibility and is free to choose among reasonable constructions of evidence.[15] The jury, therefore, was free to reject Garza's explanation and accept the government's version. The false bill of lading was correctly allowed as evidence of Garza's guilty knowledge.

Garza's arguments place each individual piece of evidence in a vacuum. We do not consider each piece of potential evidence separately, rather we review the evidence as a whole to determine its sufficiency. In so doing, we conclude that the government offered ample evidence of Garza's guilty knowledge to support his conviction.

Further, Garza fails even to address the remaining evidence against him offered at trial by the government. First, this Court has considered the fact that the amount of drugs was exceedingly large as evidence of guilty knowledge.[16] Second, Garza ignores his

---

[15] United States v. Lindell, 881 F.2d 1313, 1322 (5th Cir. 1989), cert. denied, 496 U.S. 926 (1990); United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982), affirmed on other grounds, 462 U.S. 356 (1983)..

[16] In United Sates v. Williams-Hendricks, 805 F.2d 496, 501 (5th Cir. 1986). This Court sustained a jury's finding of guilty knowledge based on little more than is present in this case. In Williams-Hendricks, the evidence against the defendant included

own admission that he falsified his log book to reflect a significantly later departure time that actually existed. And third, Garza overlooks the damaging evidence concerning his leaving his rig unlocked and unattended for over an hour at a dark truck stop. Although he testified that he did so because he thought that the shipper would place the substitute bill of lading in the truck while he was gone, the jury was not bound to believe him. The record clearly reflects that the defendant admitted that he drove his truck, after it was loaded, to the Union 76 Truck Stop, left it unlocked with the keys in the ignition, hitchhiked home, and then waited an hour before returning to depart on his journey to Los Angeles.

Convictions based on such evidence as the United States presented in this case are not uncommon. In United States v. Gonzalez-Lira,[17] we upheld a finding of guilty knowledge based on the same amount of if not less evidence than is present in this case. In Gonzalez-Lira, the only evidence presented to show the defendant's guilty knowledge was the large amount of drugs present, discrepancies in the bill of lading, an implausible story, and the fact that the defendant had been aware that his truck had been used in a prior drug smuggling attempt before he purchased it. Here,

---

only the large amount of drugs present (Thirty-eight pounds of marijuana), the defendant's nervousness at the inspection station, his lack of credibility on the stand, and the fact that his son, who was present in the vehicle when the drugs were seized confessed to the charges in spite of the fact that he maintained that his father had no knowledge of the drugs.

[17] 936 F.2d 184 (5th Cir. 1991).

the defendant was nervous and trembling; a false bill of lading was discovered hidden in the truck; the defendant admitted to falsifying his log book, for which he offered an implausible story; an enormous quantity of drugs was discovered in the truck; and ample evidence of suspicious circumstances pertaining to the defendant's delayed departure and abandonment of his truck prior to that departure was presented at trial.

### III.

Next, Garza contends that the trial court's admission of the DEA agent's testimony regarding the presence of Garza's name in the NADDIS computer constitutes grounds for reversal. At trial Garza's counsel called a DEA agent to testify. In response to questioning by Garza's counsel, the agent testified that the supplier and the trucking company involved in this case, in addition to one of the government's witnesses, were listed in their system. On cross-examination, the government asked if any of the other people involved in this case were listed in this same computer system. The agent testified that Garza's name appeared in the system in connection with an earlier drug smuggling case. In addition, he reported that 20 names found in Garza's address book, including the names of some of Garza's family members, were also in the system. Garza's counsel did not object.

Because no objection to the evidence was made, "this Court may reverse ... only if the district court committed plain error" in

11

allowing the evidence to reach the jury[18] and such admission prejudiced the defendant. Plain error is "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice".[19]

Under this analysis we must first determine if it was error to admit the complained of evidence. We conclude that it was indeed error. Evidence of an extrinsic offense is never admissible purely to show the defendant's bad character.[20] In <u>United States v. Beechum</u>[21], we set forth the test for when evidence of a defendant's extrinsic offenses may be admitted for some other purpose such as proving intent. The <u>Beechum</u> test requires the evidence to be logically relevant and that its probative value outweigh its prejudicial effect.[22]

Garza contends that the evidence in question fails both parts of the test for admissibility. First, Garza argues that the government failed to show that the evidence was logically relevant. In <u>Beechum</u>, this Court held that the evidence of an extrinsic offense is relevant "only if an offense was in fact committed and

---

[18] <u>United States v. Marrero</u>, 904 F.2d 251, 259 (5th Cir. 1990), <u>cert</u>. <u>denied</u>, 498 U.S. 1000 (1990).

[19] <u>United States v. Fortenberry</u>, 914 F.2d 671, 673 (5th Cir. 1990), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 111 S.Ct. 1333 (1991).

[20] Fed. R. Civ. P. 404(b).

[21] 582 F.2d 898 (5th Cir. 1978) (en banc), <u>cert</u>. <u>denied</u>, 440 U.S. 920 (1979).

[22] <u>Id</u>. at 911.

12

the defendant in fact committed it".[23]  Without such proof, the
evidence fails to reveal anything about Garza.[24]  The government was
therefore required to offer proof "demonstrating that the defendant
committed the offense".[25] As Garza points out, the government made
no such offer of proof.  Rather, it merely asked the witness if
Garza's name appeared in the computer.  By his own testimony, the
agent conceded that the presence of a name in  the system did not
prove that the individual committed the offense he was for which he
was listed.  Rather, the presence of the name in the system merely
proved that he was suspected by the DEA of involvement in an
offense.[26]  Thus, the government failed to show that the evidence
was logically relevant.

We could end our discussion of admissibility at this juncture;
however, we also hold that the evidence fails the second part of
the Beechum test as well.  Obviously linking the defendant to a
similar crime is prejudicial.  The only possible probative value of
this evidence is the possibility that if the defendant had guilty
knowledge in the extrinsic offense, this might tend to show he had
guilty knowledge in this case.  For the same reason that we hold

---

[23]  Id. at 912.

[24]  United States v. Lemaire, 712 F.2d 944, 947 (5th Cir.
1983), cert. denied, 464 U.S. 1012 (1983).

[25]  Id. at 913.

[26]  A different man was stopped at the same checkpoint at which
Garza was stopped carrying 500 pounds of marijuana.  In some
unknown way, the DEA found a connection between the man stopped and
Garza's brother and possibly Garza himself.  Basically, the DEA has
nothing on Garza concerning the marijuana bust.

that the evidence is not logically relevant, we also hold that it had little to no probative value.  The government failed to show that Garza had guilty knowledge concerning the extrinsic offense, so it cannot use this offense to show guilty knowledge in this case.  Due to the lack of probative value, it is clear that any such value is outweighed by the prejudicial effect of this evidence.  Thus the evidence was inadmissible under 404 (b) and Beechum.

Our analysis of this issue does not end with our determination that the evidence was inadmissible.  Because Garza's counsel did not object to admission of this evidence, a finding of plain error is required for reversal.  In United States v. Fortenberry, this Court held that plain error is an error "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice".[27]  In Fortenberry, the Court held that the admission of evidence of the defendant's previous bomb threat did not constitute plain error.[28]  The Court noted the fact that this evidence constituted "only a tiny part" of the Government's case against the defendant.[29]  In addition it noted the absence of emphasis of this evidence by the prosecutor before the

---

[27]  914 F.2d at 673 (quoting United States v. Graves, 669 F.2d 964, 971 (5th Cir. 1982)).

[28]  Id.

[29]  Id. The defendant was convicted with conspiracy to commit arson, possession of an unregistered firearm, and transportation of the firearm on a commercial airliner.

14

jury.

Although this case is very different, we hold that admission of the evidence did not constitute plain error for similar reasons. The presence of Garza's name in the computer system was not only a "tiny part" of the Government's case, it was not even a part of the Government's case-in-chief. The Government did not present this testimony as part of its attempt to prove the defendant's guilty knowledge--it extracted the evidence on cross examination in an attempt to rebut the defendant's implication that the other parties in the case were responsible for the drugs' presence in his truck. Further, the government did not emphasize this evidence in its remarks to the jury. Finally, the trial court explicitly instructed the jury that Garza was not on trial for the marijuana seizure mentioned by the agent. As the Court in Fortenberry decided, so we decide, "[a]fter a careful review of the record, we concluded that admission of the ... testimony does not rise to such an egregious level" as to constitute plain error.[30] Reversal is not appropriate in this case.[31]

Because we find that the admission of the DEA agent's testimony was not reversible error we do not reach the government's alternate argument that the testimony was the consequence of invited error.

---

[30] Id. at 673.

[31] We note United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991), where this Court held that the admission of irrelevant facts that have a prejudicial effect reqires a reversal. We find this case to be inapplicable. In Anderson, the Court was not bound by the plain error standard.

IV.

In his final point of appeal, Garza contends that he was denied effective assistance of counsel because of his lawyer's failure to object to the DEA Agent's testimony concerning Garza's involvement in the prior drug deal. "In this circuit the general rule is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal unless it has first been raised before the district court."[32] Exception to this general rule is made only where the record is sufficiently developed with respect to the merits of the claim.[33] The record has not been developed with respect to this claim. Therefore, we decline to resolve it on appeal.

V.

The judgment of conviction is affirmed. The appellant remains free to pursue his claim for ineffective assistance of counsel in accordance with 28 U.S.C. § 2255.

---

[32] <u>United States v. Kinsey</u>, 917 F.2d 181, 182 (5th Cir. 1990).

[33] <u>Id</u>.

16