**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-7165
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


VERSUS

JOHN WAYNE PENNINGTON
and JOHN MITCHELL MARGIOTTA,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Texas
_____
(March 14, 1994)

Before WOOD[*], SMITH, and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


John Margiotta and John Pennington appeal the district court's denial of their motions for acquittal based upon insufficient evidence made after a jury found Margiotta guilty of possession with intent to distribute marihuana and found Pennington guilty of possession with intent to distribute marihuana and conspiracy to possess with intent to distribute marihuana. Furthermore, Pennington raises several assignments of error regarding the

_____

[*] Circuit Judge of the Seventh Circuit, sitting by designation.

prosecutor's comments on his post-arrest silence, the district court's refusal to submit a jury instruction on the knowing possession element of his offenses, and the enhancement of his sentence for possession of a firearm. We find that there was sufficient evidence for a rational jury to have convicted the defendants and therefore affirm as to Margiotta. Nevertheless, the district court erred in refusing to submit Pennington's jury instruction; we reverse his conviction and remand for a new trial.

I.

On September 17, 1992, Pennington and Margiotta, inexperienced truckers who lived in Miami, had just completed a delivery that left them in Laredo, Texas. Pennington contacted a broker to determine whether there were any loads in the West Texas area bound for Florida. The broker informed him that a load of unglazed Mexican tile in Rio Grande City needed to be shipped to Miami.

The defendants testified that they left Laredo around noon and arrived at the warehouse office in Rio Grande City at approximately 3:00 p.m. They talked to the warehouse owner and made arrangements for the shipment. They then drove to the warehouse across town and backed their trailer up to the loading dock, where it was loaded for about thirty minutes. The trailer had been empty prior to loading, and the defendants testified that they did not observe the entire loading process, but neither did they observe anyone place anything other than the tiles in the trailer.

2

After the trailer was loaded, the defendants went back to the office, picked up the bill of lading, and headed toward Edinburg to spend the night. They arrived in Edinburg at around 6:30 p.m. and parked the rig in a truck stop. Because each pallet of tile weighed approximately 3200 pounds, the trailer was not locked. The defendants checked into a motel and went to sleep.

The defendants left Edinburg the next day at around 2:00 p.m. and went to a truck stop in Harlingen to weigh their truck. After determining that their drive axle was overweight, they adjusted the fifth wheel to try to redistribute the weight. The adjustment did not correct the weight problem, so they left Harlingen overweight. They also spent several hours copying the log book information into a separate log book for Pennington because of a new federal regulation.

Margiotta drove the stretch between Harlingen and Sarita, arriving at approximately 7:00 p.m. As he approached the primary inspection area at the Sarita check point, Margiotta held the bill of lading out the window. Customs agent Jerry Welsh took the bill of lading and asked the defendants standard questions about the load and their nationality. He noticed that the bill of lading was dated July 16, 1992, two months earlier.[1] He asked Margiotta when he had loaded his truck, and Margiotta responded that he had done so the day before.

---

[1] The warehouse owner testified that the bill of lading was legitimate and that the incorrect date was his error.

3

Welsh asked whether he could look in the back of the truck, and the defendants consented. When Margiotta opened the doors, Welsh observed pallets of tile but did not see anything else at that time. Welsh did not detect any odor, either. Welsh climbed into the trailer and began counting the pallets. He saw several cardboard boxes, picked one up, and noticed a perfume smell. Welsh came out of the trailer and asked Margiotta to move the trailer to the secondary inspection area. A narcotics dog indicated that drugs were present in the cardboard boxes; one of the boxes was removed from the trailer and opened. Marihuana was discovered in the boxes, and the defendants were arrested.

After the defendants were read their Miranda warnings, each agreed to talk to Welsh. Both defendants denied knowing that the marihuana was in the truck and disclaimed any knowledge of how it got there. Welsh asked Pennington to speculate about how 591 pounds of marihuana could get into the back of the trailer, to which Pennington responded, "I don't want to talk about it anymore."

II.

Pennington and Margiotta were indicted on one count of possession of marihuana with intent to distribute and one count of conspiracy to possess marihuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846. The jury found Margiotta guilty of the possession count but not guilty

4

on the conspiracy charge; it found Pennington guilty on both counts.

## III.

Both defendants moved for judgment of acquittal at the end of the state's evidence but did not renew the motion at the end of their own evidence. The standard for reviewing a conviction allegedly based upon insufficient evidence is whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt. United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir.) (citation omitted), cert. denied, 113 S. Ct. 330 (1992).

The evidence is reviewed in the light most favorable to the government, drawing all reasonable inferences in support of the verdict. Jackson v. Virginia, 443 U.S. 307 (1979). But if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed. United States v. Menesses, 962 F.2d 420, 426 (5th Cir. 1992) (citations omitted). It is not necessary that the evidence exclude every reasonable hypothesis of innocence, United States v. Stone, 960 F.2d 426, 430-31 (5th Cir. 1992); the jury is free to choose among reasonable constructions of the evidence, United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982), aff'd, 462 U.S. 356 (1983). The only question is whether a rational jury could have found each essential element of the offense beyond a reason-

5

able doubt.  <u>United States v. Jackson</u>, 700 F.2d 181, 185 (5th Cir.) (citation omitted), <u>cert. denied</u>, 464 U.S. 842 (1983).[2]

To establish possession of marihuana with intent to distribute, the government must prove beyond a reasonable doubt (1) knowing (2) possession of marihuana (3) with intent to distribute it.  <u>United States v. Gonzalez-Lira</u>, 936 F.2d 184, 192 (5th Cir. 1991).  To establish a conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt (1) an agreement between two or more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate voluntarily in the conspiracy.  <u>United States v. Leed</u>, 981 F.2d 202, 204-05 (5th Cir.), <u>cert. denied</u>, 113 S. Ct. 2971 (1993).  Both defendants contend that they did not know of the marihuana's existence, and therefore, they cannot be guilty of either offense.[3]

_____

[2] The government claims that because the motion for acquittal was not renewed after the close of the defendants' cases, the failure to grant a motion for acquittal should be reviewed under the plain error standard.  <u>See United States v. Vaquero</u>, 997 F.2d 78, 82 (5th Cir.), <u>cert. denied</u>, 114 S. Ct. 614 (1993).  Pennington responds by noting that the standard should be the same, regardless of whether the motion is renewed or made at all, because a conviction on insufficient evidence is necessarily a miscarriage of justice under the plain error standard.  The government eventually concedes that the standards are indistinguishable, citing <u>United States v. Davis</u>, 583 F.2d 190, 199 (5th Cir. 1978) (Clark, J., concurring).  Furthermore, where the trial court's action renders the motion for acquittal "an empty ritual," the failure to renew the motion does not constitute waiver by the defendant.  <u>United States v. Gonzalez</u>, 700 F.2d 196, 204 n.6 (5th Cir. 1983).  Thus, it is irrelevant that the defendants did not renew their motions; the only question is whether there was sufficient evidence for a rational jury to have convicted them.

[3] Pennington does not dispute a finding of constructive possession or that the quantity was enough to impute the intent to distribute.  He only challenges the "knowing" component of the offense.  Margiotta seems to challenge all three components of the charge, but his objections are without merit; possession can be imputed to him as a passenger and a driver, and intent to distribute can be inferred from the quantity of drugs.  <u>United States v. Garcia</u>, 917 F.2d 1370, 1377 (5th Cir. 1990).

6

The knowledge element in a possession case can be inferred from control of the vehicle in some cases; when the drugs are hidden, however, control alone is not sufficient to prove knowledge. United States v. Garza, 990 F.2d 171, 174 (5th Cir.), cert. denied, 114 S. Ct. 332 (1993). Since the marihuana was not concealed in a hidden compartment, the government contends that the jury was entitled to infer knowledge of the marihuana from the ownership and control of the trailer. Defendants claim, however, that the marihuana was hidden in the trailer, and therefore, other evidence was required to prove knowledge.

The threshold issue is whether the marihuana was "hidden" in the trailer, requiring the government to have produced further evidence of knowledge. We conclude that the marihuana was hidden. The government merely asserts that the marihuana was "stacked in the midst" of the cargo and not "hidden in a secret compartment." But the control of the vehicle will suffice to prove knowledge only where the drugs "are clearly visible or readily accessible." United States v. Richardson, 848 F.2d 509, 513 (5th Cir. 1988). In Garza, 990 F.2d at 174 nn.10 & 12, the court determined that drugs concealed in burlap sacks stacked on and behind lime boxes in the trailer of a truck were not in "plain view" or "readily accessible." The drugs need not be concealed in "hidden compartments," id. at 174 n.12; even though the sacks were visible from outside the trailer, the court held that the government was required to show more than control of the vehicle.

7

In Gonzalez-Lira, 936 F.2d at 192, the court required additional proof of knowledge even though the border agent could smell the marihuana from the rear of the trailer. Here, the marihuana was concealed in boxes that were stacked in spaces between the pallets. The boxes were not visible from outside the trailer and there was no noticeable odor of marihuana. Therefore, the government could not rely upon the control of the vehicle as proof of knowledge of the marihuana.

Additional evidence of guilt may come from nervousness, inconsistent statements, implausible stories, or possession of large amounts of cash by the defendants. United States v. Shabazz, 993 F.2d 431, 442 (5th Cir. 1993). The government claims that the following factors add to the inference of knowledge: (1) the circuitous route taken by the defendants; (2) the length of time taken; (3) the explanation of the trip offered by defendants; and (4) their disheveled appearance, despite ten hours' sleep.

Defendants claim that they were not nervous, they took the route suggested by their broker, their stories were consistent, and their explanation was not implausible. In particular, the defendants note that the trailer was never locked and that had they known of the marihuana, they certainly would have locked it. Agent Welsh confirmed that the trailer was unlocked at the checkpoint. Furthermore, the defendants note that they did not supervise the loading of the pallets, and the government presented no evidence of fingerprints on the boxes. They did not have large sums of money, they did not attempt to flee, the bill of lading was

8

not falsified, see supra note 1, the defendants did not appear nervous when the trailer was searched, their stories were consistent with each other's, and their stories did not change over time. Moreover, the fact that they drove the truck overweight, risking a likely ticket and inspection, indicates a lack of knowledge.

Nevertheless, evidence of the defendants' circuitous route and the timing of their trip supported the jury's conclusion that they had picked up a load of marihuana. The jury was free to choose among reasonable constructions of the evidence, Bell, 678 F.2d at 549; the focus is not on "whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S. Ct. 853, 861 (1993). After weighing the evidence, the jury chose to disbelieve the defendants' story and concluded that they were guilty beyond a reasonable doubt. There was sufficient evidence to support that conclusion.

IV.

Pennington[4] also argues that the prosecution improperly commented on his post-Miranda silence in violation of Doyle v. Ohio, 426 U.S. 610, 618 (1976). Under Doyle, the Due Process Clause prohibits the impeachment of a defendant's exculpatory story by using the defendant's post-arrest, post-Miranda silence.

---

[4] Margiotta waives the remaining issues by failing to brief them and by failing to incorporate by reference his codefendant's arguments. See United States v. Miller, 666 F.2d 991, 998 n.6 (5th Cir.), cert. denied, 456 U.S. 964 (1982); FED. R. APP. P. 28(a) & 28(i). He argues only for insufficiency of the evidence.

9

Although "virtually any description of a defendant's silence following arrest and a <u>Miranda</u> warning will constitute a <u>Doyle</u> violation," a prosecutor's comments must be viewed in context. <u>United States v. Shaw</u>, 701 F.2d 367, 381-82 (5th Cir. 1983), <u>cert. denied</u>, 465 U.S. 1067 (1984). The test is whether the "manifest intent" of the remarks was to comment on the defendant's silence, or (stated another way), whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. <u>Id.</u> at 381.[5] And the defendant's willingness to give some statements after arrest does not give the prosecutor the right to impeach him by commenting on what he did not say. <u>United States v. Laury</u>, 985 F.2d 1293, 1304 n.10 (5th Cir. 1993).

The relevant testimony comes from the government's examination of Welsh:

> Q: What did Mr. Pennington tell you when you asked him if he could explain how 591 pounds of marihuana got in his truck?
>
> A: At that time he just became silent and he said he didn't have anything to say about it.
>
> Q: He didn't deny knowing about it, he just said he had nothing to say?

---

[5] It is uncertain whether Pennington properly objected to the comments. When the witness said, "He didn't deny knowing about it, he just said he had nothing to say," Pennington's counsel objected, "Excuse me. He has already testified he denied knowing about it." Although this objection is related to the subject of Pennington's silence, it is not specific enough to constitute a valid objection. Therefore, reversal of the conviction is required only if the statements rise to the level of plain error. <u>United States v. Johnson</u>, 558 F.2d 1225, 1230 (5th Cir. 1977). Nevertheless, a court should scrutinize an error more closely, even under the plain error standard, where the failure to preserve the precise grounds for objection is mitigated by an objection on related grounds. <u>United States v. Lopez</u>, 923 F.2d 47, 50 (5th Cir.), <u>cert. denied</u>, 111 S. Ct. 2032 (1991).

> Objection: Excuse me. He has already testified he denied knowing about it.
>
> Court: Re-direct. He may ask the question. What is the question again?
>
> Q: Mr. Pennington didn't deny knowing about it, he merely told you that, "I have nothing to say."
>
> A: That is correct.

Furthermore, during its rebuttal argument, the government argued, "And at some point finally the border patrol agent said, `How else can you explain 591 pounds of dope in your truck?' And he says, `I don't have anything to say about that.'"

The government contends that the prosecutor was only commenting on what Pennington said, not what he did not say. Moreover, the testimony only served to impeach Pennington's claim not to have known about the marihuana. The prosecutor's comments do not reflect an intent to comment on Pennington's right to remain silent. Given the narrow scope of the comments, the jury was unlikely to interpret them as a comment on the defendant's silence.

V.

Pennington also claims that the district court erred in refusing to submit his proposed jury instruction. We review the court's decision for abuse of discretion. United States v. Sellers, 926 F.2d 410, 414 (5th Cir. 1991). Discretion, though, cannot be based simply upon a court's inclination, but rather must be made with reference to sound legal principles. United States v. Taylor, 487 U.S. 326, 336 (1988). The refusal to give a jury

11

instruction constitutes error only if the instruction (1) was substantially correct, (2) was not substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense. Shabazz, 993 F.2d at 440 n.13.

Since we conclude that the marihuana was "hidden" so that additional proof of knowledge was required, the instruction was a correct statement of the law. The government does not fully address the second and third components of the test. Pennington contends, however, that the instruction concerning knowledge was insufficient to cover Pennington's defense. The instruction stated, "An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident." It did not mention the effect of constructive possession on the defendant's knowledge.

We conclude that the instruction did not substantially cover the issue of constructive possession, and therefore Pennington satisfied the second part of the test. And given the fact that his sole defense rested upon his lack of knowledge of the marihuana's existence, the failure to give the instruction seriously impaired his defense. Therefore, we must reverse his conviction and remand for a new trial.

## VI.

We need not reach Pennington's remaining issues, having concluded that the error in refusing to allow his jury instruction

12

warranted a new trial.  We therefore REVERSE as to Pennington and REMAND for a new trial.  Margiotta's conviction is AFFIRMED.