**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 23, 2009

No. 08-61007
Summary Calendar

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

STEVEN ALLEN ADAMS

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:07-CR-132-1

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A jury convicted Steven Allen Adams of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Adams now appeals that conviction, arguing that the evidence was insufficient to support the jury's verdict and that the district court erred by denying Adams's proposed jury instructions. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. BACKGROUND

Adams befriended fellow inmates Donald Poston and Tobie Krohe while serving a sentence for a previous conviction. After Adams's release, he rented a room in Poston's house and bought a computer from Poston's wife. Adams kept the computer in his room in the Postons' house, which did not have a lock on the door. Adams and Krohe also remained friends. After Krohe's release from prison, he began to visit Adams. Eventually Krohe, who was under indictment for possession of child pornography, approached the FBI regarding Adams. Krohe told the FBI that Adams possessed child pornography. After some investigation, the FBI obtained a search warrant for Adams's room.

Found were three separate collections of child pornography. There were approximately 194 images in all. The FBI obtained images from Adams's computer and found printed images in an envelope in a drawer. There also were images on compact discs in a box under his bed. At least one of the printed images matched an image on Adams's computer. Adams's theory at trial was that Krohe planted the images on his computer and in his drawer. Krohe's purpose allegedly was to implicate Adams in exchange for favorable treatment in Krohe's criminal proceeding.

Adams testified that Krohe often visited him. One night, Adams woke up to find Krohe using his computer. On the other hand, a government agent testified that the images on Adams's computer were created or modified at different times, indicating that Krohe during one night could not have placed all the images on the computer. Krohe also testified that Adams asked him to obtain images containing child pornography, and that Adams asked him to arrange for a young boy to visit Adams. Finally, Krohe testified that he and Adams viewed child pornography together and that he found the folder containing child pornography in Adams's drawer.

There were a number of troubling aspects of Krohe's testimony that raised doubts about his credibility. For example, he testified Adams had a previous offense of child molestation, but Adams did not. Krohe also alleged that he could not have downloaded pornography onto Adams's computer because the computer made a loud noise when anyone other than Adams touched it. There was nothing to support that tale. Krohe also did not seem forthcoming about consideration he might hope to receive from the government for his testimony. He claimed his motivation for testifying was to protect the public, though he was also convicted of possessing child pornography during the time that Adams possessed it. Krohe also sent a letter to the FBI agent assigned to Adams's case, assuring the agent that he would be an effective witness.

The final basis for Adams's conviction was a number of images found on five compact discs located under his bed. Adams alleged that these images were placed on the discs by his brother. Adams did not even know they existed. His explanation for possessing the discs was that his brother had been sent to prison. Adams brought his brother's van to Mississippi. Due to physical disabilities, Adams was unable to unload the van. Poston's son unloaded the contents and put them in Poston's shed. Later, Poston asked Adams to get the items out of the shed. Adams again asked Poston's son for help, instructing him to keep anything that looked important and throw away the rest. The five discs containing child pornography had handwritten labels indicating they might be important. Adams argues that this explains why Poston's son kept the discs. Everything retained from his brother's van, including the discs, was put into a bin under Adams's bed. The FBI did not analyze the discs for Adams's fingerprints. Adams's brother died before trial and was unable to provide any information regarding the discs.

The jury found Adams guilty of one count of possession of child pornography and not guilty of receipt of child pornography over the Internet.

The key pieces of evidence used to convict Adams were Krohe's testimony and the images on the compact discs. Other witnesses, including Poston, testified that they knew of no improper conduct between Adams and any children or any other examples of Adams engaging in illegal activity. Adams was sentenced to the statutory minimum of ten years in prison.

## II. DISCUSSION

Adams preserved his challenge to the sufficiency of the evidence by filing a motion for judgment of acquittal. We review *de novo* a denial of that motion. *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). The evidence is sufficient to support the conviction if, when viewing the evidence and any valid inferences from the perspective favorable to the verdict, "a rational juror could have found defendants guilty beyond a reasonable doubt." *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999). The jury makes credibility determinations and can find guilt even when some "reasonable hypothesis of innocence" could be said to exist. *Mitchell*, 484 F.3d at 768.

Adams argues the evidence was insufficient because Krohe's testimony was not credible and Adams did not know about the discs found under his bed.[1] Accepting or rejecting Krohe's testimony and Adams's explanations are matters for the evaluation of the jurors. *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). It is the jury's unique role to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *Id.*

---

[1] Adams also originally argued that there was insufficient evidence to support his conviction because the government did not offer expert testimony establishing the age of the models in the pornography or offer evidence establishing that the models in the pornography were real people as opposed to virtual images. However, after the government pointed out that Adams's trial counsel agreed to the stipulation that 194 images of child pornography were found by investigators, Adams withdrew these two arguments in his reply brief.

Krohe was not an ideal witness for the government, but it was for the jury to weigh his credibility and the value of his testimony. The jury heard Adams's lawyer cross-examine Krohe and Adams's contradiction of Krohe's story. Still, it found Adams to be guilty. We find nothing unreasonable about that.

Adams also contends that the district court erred by refusing his proposed jury instructions. We review the district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008). Refusing a proposed jury instruction constitutes error "only if the instruction (1) was substantially correct, (2) was not substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense." *United States v. Pennington*, 20 F.3d 593, 600 (5th Cir. 1994).

Adams requested this instruction: "If the thing is not clearly visible or readily accessible, control over the thing alone is insufficient to prove knowledge of the thing. The threshold issue is whether the thing is hidden. If the thing is hidden, then the government must produce further evidence of knowledge." He argues that this instruction was proper based on our decision in *Pennington*. That precedent involved two inexperienced truck drivers from another state who picked up a load in Texas. *Id.* at 596. They did not watch the complete loading of the truck, and they kept the truck's trailer door unlocked overnight. *Id.* The next day the truck was inspected. Though only pallets of tile were initially observed to be in the truck, it was eventually established that the truck also contained boxes of marijuana. *Id.*

Quite differently, Adams's computer may have contained thousands of files, but the child pornography images were unencrypted and located in Adams's "My Documents" folder, easily and quickly accessed. The files also were created over a period of years. The fact that a computer contains a large number of files does not mean that readily accessible files should be considered hidden.

Additionally, the envelope containing printed images was located in a clear plastic storage bin. The district court did not abuse its discretion in refusing the jury instruction regarding hidden items.

The district court's judgment is AFFIRMED.