United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-70033

KENNETH PARR,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Kenneth Parr appeals from the district court's denial of habeas relief and he also requests a certificate of appealability ("COA") from this court. Parr was convicted and sentenced to death for the 1998 murder of Linda Malek. Parr petitioned for federal habeas relief challenging his conviction and sentence. The district court denied Parr's request for habeas relief, but granted a COA on seventeen issues. Parr requests a COA on one issue not raised before the district court. For the following reasons, we affirm the district court's denial of habeas relief and deny Parr's request for a COA.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 1998, Linda Malek died as a result of gunshot wounds to the head. Around two o'clock that morning, Malek's mother, Charlotte Brown, and her stepfather, Mike Brown, received a call from Malek's daughter, Ashley, informing them that two men had broken into their home and shot Malek. The Browns drove to Malek's home and discovered that several items were missing including, inter alia, a television, a VCR, a video game console, jewelry, and Malek's car keys. Malek's daughter and son, Zachary, were both present when their mother was killed. According to Ashley, the two men ordered Malek and her children to lie face down on the floor. Malek was crying and begged them not to shoot her. The evidence indicated that Malek was sexually assaulted.

Evidence presented at trial revealed that the morning of the murder Parr's girlfriend, Monica Silva, returned to her apartment and found Parr and his brother, Michael Jimenez, there; Jimenez was holding a jewelry box. Parr told Silva that he had gone somewhere with a gun and committed burglary. Parr then packed up most of his belongings and Silva took him to his mother's house. Parr later informed Silva that he had hidden some items in the air-conditioning vent at her apartment. When Silva returned home, she found a VCR, a video game console, a gun, and a jewelry box. While Silva was taking out her trash, the bag fell open and a purse that contained Malek's driver's license fell out.

A resident of Silva's apartment complex testified that she heard two gunshots on the night of the murder. Twenty minutes later, she heard two men arguing outside her window and when she looked outside her window she saw two young men who appeared to be Latino or African-American. Both men were carrying a television. Another resident of the apartment complex also testified that

she saw and heard two young men talking and recognized the men as Kenneth Parr and Michael Jimenez.

In May 1999, Parr was convicted of one count of capital murder for the murder of Linda Malek and was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Parr v. State*, No. 73,497 (Tex. Crim. App. March 7, 2001) (unpublished opinion). During the pendency of his direct appeal, Parr filed an application for habeas relief in state court; the Texas Court of Criminal Appeals denied his application. *Ex parte Parr*, No. 48,257-01 (Tex. Crim. App. November 13, 2002) (unpublished order). Parr filed a petition for habeas relief in the federal district court on January 27, 2004.

Parr asserted twenty-eight separate grounds for review, which the district court then combined into seventeen claims. The court granted summary judgment to the State on each of the seventeen grounds, but granted Parr a COA as to each ground as well.

## II. STANDARD OF REVIEW

"This Court reviews a district court's grant of summary judgment in a habeas proceeding de novo." *Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir. 2002). We review a district court's findings of fact for clear error and issues of law de novo. *Collier v. Cockrell*, 300 F.3d 577, 582 (5th Cir. 2002). Parr's petition for habeas relief was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"); accordingly, his petition is governed by the procedures and standards imposed by AEDPA. *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).

Under AEDPA, a federal court may not issue a writ of habeas corpus for a defendant convicted in state court unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

3

by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2001). "A state court's decision will be contrary to clearly established federal law when it reaches a legal conclusion in direct opposition to a prior decision of the . . . Supreme Court or when it reaches a different conclusion than the . . . Supreme Court on a set of materially indistinguishable facts." *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir.2001). "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Id.*

## III. DISCUSSION

The district court granted Parr's request for a COA on seventeen issues. Due to the large number of issues, we first address those claims that are procedurally barred or abandoned.

### A.

Parr argues that his conviction was not based on proof beyond a reasonable doubt and that he is actually innocent. The district court concluded that both of these claims are procedurally barred. A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court prior to requesting federal collateral relief. *Smith v. Dretke*, 422 F.3d 269, 275 (5th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Additionally, the Supreme Court has held that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Accordingly, Parr "must first raise a substantial doubt

4

about his guilt, which would then cause us to examine any barred constitutional claims." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

Parr's arguments in support of his innocence are that there were no eyewitnesses placing him at the scene, there was no evidence showing when DNA evidence was placed on Malek's body, and the bruises on Malek's arms and face occurred twelve to eighteen hours before her death.[1] All of the facts to which Parr points were available for the jury to consider. Additionally, the jury could convict Parr of capital murder either as a principal, or as an accomplice, based on the commission of murder in the course of either burglary, or aggravated sexual assault. Viewing the facts in a light most favorable to the prosecution, we conclude a reasonable juror could have reached the conclusion that Parr committed rape and/or burglary, and murder. *See Neville v. Dretke*, 423 F.3d 474, 481 (5th Cir. 2005). Therefore, Parr has not raised a substantial doubt about his guilt. Parr concedes that he did not present these claims to the state court on direct appeal or in state habeas proceedings; accordingly, the district court correctly concluded that these claims are procedurally barred.

Parr also argues that the admission of hearsay statements made by Michael Jimenez to Maria Cervantes violated the Confrontation Clause. Parr did not object to the admission of these statements on Confrontation Clause grounds during the trial. On direct appeal, Parr argued that admission of Jimenez's statement violated the Confrontation Clause, but the state court determined that Parr failed to preserve any constitutional error. "'This Circuit has held that the Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar.'" *Dowthitt*, 230 F.3d at 752 (quoting *Corwin v. Johnson*, 150 F.3d 467,

---

[1]The medical examiner actually testified he could not be more specific than twelve to eighteen hours, but that it could have been less than that; indeed, he stated that twelve to eighteen hours was actually the maximum time.

473 (5th Cir.1998)). We are precluded from granting habeas relief where the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law procedural ground. *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003). Parr also failed to present his Confrontation Clause claim to the state habeas court. Thus, the district court correctly held that these claims are procedurally barred.[2]

### B.

Parr asserts that the trial court erred (1) in denying his *Batson* challenge to the State's peremptory challenge of venire member Monique Gadson; (2) in admitting a letter allegedly written by Parr and sent to Monica Silva; (3) in admitting pictures of a pair of tennis shoes found at Parr's mother's house; (4) in denying Parr's motion to suppress evidence seized from the apartment that he shared with Silva; (5) in denying Parr's request for a jury instruction on accomplice witness testimony during the guilt/innocence phase of the trial; and (6) in admitting hearsay statements made by Malek's children to their grandmother in violation of the Confrontation Clause. Parr failed to address these arguments in his brief to this court, but instead refers us to the arguments set forth in his petition before the district court. By failing to argue these issues in the body of his brief, Parr has abandoned them. Fed. R. App. P. 28(a)(9); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). Nevertheless, we have considered each of these claims and conclude that the state court's rejection of these claims was not unreasonable and the district court correctly denied relief.

---

[2]Even if this claim were not procedurally barred, both of the statements were nontestimonial and admissible under state law pursuant to exceptions to the hearsay rule. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. . . ."). Jimenez's statement was admissible as a statement against interest under Texas Rule of Evidence 803(24).

C.

We turn now to the eight remaining claims on which the district court granted a COA.

1.

Parr argues that his conviction was obtained in violation of the Fifth Amendment under the doctrine of collateral estoppel. Parr was on parole from the Texas Youth Commission ("TYC") at the time of the murder. After the murder, the state attempted to revoke Parr's parole based on his participation in the theft of Malek's television; however, at the revocation hearing, the examiner concluded there was insufficient evidence to prove that Parr was involved. Parr argues that the doctrine of collateral estoppel prevented the state from using the burglary as a predicate felony for the capital murder conviction. Parr contends that collateral estoppel is a constitutional bar to prosecution independent of the double jeopardy clause. We disagree. We have held that the double jeopardy clause does not extend to parole revocation proceedings. *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. June1981). Further, we have previously rejected "attempts to erect a due process basis, independent of the double jeopardy clause, for the application of collateral estoppel." *Showery v. Samaniego*, 814 F.2d 200, 203 (1987). Accordingly "[i]f [Parr's] collateral estoppel claim is simply an effort to state a Double Jeopardy Clause claim, it fails . . . . If it is an effort to state an independent violation of the Fourteenth Amendment's Due Process Clause, it also fails." *Stringer v. Williams*, 161 F.3d 259, 262-63 (5th Cir. 1998). The district court correctly denied relief on this ground.

2.

Parr contends that the State failed to disclose information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Parr alleges that the prosecution failed to disclose the following:

(1) a handwritten note of one of the prosecutors, (2) police coercion of a witness for the prosecution, and (3) a close relationship between the prosecution and Parr's parole officer.

Under *Brady*, the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the guilt of the defendant; however, the prosecution is not required to disclose evidence that could be discovered by exercising due diligence. *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997). To state a *Brady* claim, Parr must demonstrate: (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, and (4) failure to discover the allegedly favorable evidence was not the result of a lack of due diligence. *Id.* at 558.

a.

Parr contends that one of the prosecutor's hand written notes regarding a witness's testimony contradicts witness's trial testimony. Caron Holt testified for the prosecution regarding Parr's conduct while at the TYC. Parr contends that the prosecution had handwritten notes indicating that Holt stated Parr was not involved in serious assaults; however, at trial, Holt testified that the assault was one of the worst he had ever seen. The prosecutor's handwritten note reads, "Holt - monitored movements loosey, goosey * [defendant] did not do serious <u>assaults</u>." During the state habeas proceedings, the prosecutor explained that she made the note during the punishment phase of trial in response to the testimony of Dr. Floyd Jennings, a defense witness. Jennings testified, based on his review of the TYC records, that Parr was not involved in any serious altercations.

The state habeas court concluded that the notes were intended to remind the prosecutor to elicit testimony from the prosecution witness to rebut the defense witness's testimony and that the statement "[Defendant] did not do serious assaults" was attributable to the defense witness, Jennings,

8

not Holt. The state habeas court's factual determinations are entitled to a presumption of correctness and Parr has not attempted to rebut that presumption. 28 U.S.C. § 2254(e)(1); *Bridgers v. Dretke*, 431 F.3d 853, 857 (5th Cir. 2005). The state habeas court also concluded that evidence was immaterial. Contrary to Parr's assertions, the state court's conclusion on materiality is a mixed question of law and fact, *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999); accordingly, we cannot grant relief unless the court's conclusion was contrary to or an unreasonable application of Supreme Court precedent, 28 U.S.C. § 2254(d); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). The state court's conclusion is not an unreasonable application of *Brady*; therefore, the district court did not err in denying relief on this claim.

b.

Parr also contends that the police coerced his mother into making a second statement that was more damaging to the defense. According to Parr, in her second statement, his mother, Mary Saldeirna, minimized evidence that Parr was intoxicated and stated that Parr told her that he shot a woman. At trial, Saldeirna attributed the differences between her statements to her bad memory; however, at the state habeas proceedings, Saldeirna averred that the police threatened her and offered her immunity if she changed her statement.

The state habeas court concluded that Saldierna was not coerced and that her affidavit testimony to the contrary was neither credible nor reliable. Parr has made no attempt to rebut the presumption of correctness. *See Summers v. Dretke*, 431 F.3d 861, 871 (5th Cir. 2005). We understand Parr's argument to be that the prosecution was aware of this coercion and failed to inform him or his counsel; however, Parr had an opportunity to cross-examine Saldierna on the two statements at trial and she denied any accusation that the police had pressured her. The state habeas

9

court's conclusion that Parr did not establish a *Brady* violation was not unreasonable. Consequently, the district court correctly denied relief on this claim.

c.

Finally, Parr argues that the prosecution provided his parole officer with evidence and exerted influence over the scheduling of his parole revocation proceedings and failed to disclose this relationship. During state habeas proceedings, both Parr's parole officer and a TYC representative testified that the prosecution did provide them with evidence, but the prosecution never controlled the timing of the revocation proceedings. The state habeas court concluded that the prosecution did not significantly participate in the parole revocation proceedings. Parr has not attempted to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1). Moreover, Parr does not explain how this information would have impacted his case; as discussed above, collateral estoppel does not apply to parole proceedings."'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) (alteration in original) (quoting *United States v. Bagley*, 473 U.S. 667, 682(1985)). Accordingly, he has failed to establish a *Brady* violation and the district court correctly denied relief on this ground.

3.

Parr makes the following allegations of ineffective assistance of counsel: (1) failure to object and argue that the proceedings were barred under the doctrine of collateral estoppel; (2) failure to

interview jurors after the trial to determine whether there was any misconduct; and (3) failure to adequately investigate and present mitigating evidence during the punishment phase.[3]

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Parr must not only demonstrate that his counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment, but also that the deficient performance prejudiced him, i.e., that counsel's errors were so serious as to deprive the defendant of a fair trial. *Bigby v. Dretke*, 402 F.3d 551, 574 (5th Cir. 2005) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 687).

a.

As explained above, there is no merit to Parr's argument that his prosecution was barred by collateral estoppel; accordingly, counsel was not deficient in failing to present the argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

b.

Parr also contends that counsel was deficient for failing to investigate jury misconduct; however, as discussed below, the jury's discussion of parole did not prevent the jury from being

---

[3]Parr also argued that counsel was deficient for the following reasons: (1) failure to pursue a defense based on the timing of the bruises, (2) failure to investigate a defense based on evidence that the DNA was deposited on the victim's body at an unknown time, (3) failure to effectively cross-examine Saldierna regarding her inconsistent statements to the police and (4) failure to impeach Tecia Jackson with the testimony she gave at Parr's parole hearing. Parr admits that his remaining claims are unexhausted. As discussed above, he has not raised a substantial doubt as to his guilt that would cause this court to consider the procedurally barred claims. Nevertheless, we have examined these claims and conclude that they are meritless.

11

impartial and the evidence upon which Parr relies is inadmissible. *De La Rosa v. Texas*, 743 F.2d 299, 304 (5th Cir. 1984) ("Under Texas law, 'not every mention of parole during jury deliberations calls for reversal.' Only jury misconduct that deprives the defendant of a fair and impartial trial warrants granting of a new trial.") (citation omitted). Accordingly, Parr's counsel was not deficient in failing to investigate this claim.

c.

Finally, Parr argues that his trial counsel's presentation of mitigating evidence was deficient. Parr specifically points to trial counsel's failure to obtain records from Child Protective Services ("CPS"), despite knowing that Parr had been removed from his mother's custody. These records indicate that Parr was removed from his mother's custody for approximately two years because he and his siblings were frequently left at home unsupervised. The records also indicate that CPS received numerous complaints regarding lack of supervision and physical abuse by his mother's boyfriends. A psychologist's evaluation described ten-year-old Parr as a sad child who was acting out because he did not have consistent rules and who longed to be reunited with his mother and siblings.

Parr also submitted affidavits from several witnesses in support of his claim that trial counsel failed to present adequate mitigating evidence. The affidavits indicate that Parr had a difficult childhood during which he and his family moved around frequently, his mother was seldom at home, and he and his brothers often stole things. The state habeas court concluded that the affidavits submitted by Parr in support of this claim–those of Saldierna, Carol Parr, Alanta Williams, Jessie Parr, and Merian Whalon–were neither credible nor reliable.

Following oral argument in this case, we granted Parr's motion to supplement the record with documents his counsel discovered while preparing for oral argument. Parr submitted psychological

12

evaluations from 1994 and 1996 stating that Parr was emotionally disturbed and severely depressed. Specifically, he produced the following: (1) a psychoeducational evaluation from Matagorda County Educational Services dated March 22, 1996, indicating that Parr was eligible for special education services as learning disabled; (2) notes from the Apple Springs/Centerville Groverton ISD Wilderness School from October 13, 1994, showing that Parr satisfied the criteria for: "Emotionally Disturbed"; and (3) records from the Hope Wilderness Schools Houston/Trinity County Resource Education Coop dated October 11, 1994, classifying Parr's emotional disturbance as "Depressive Disorder GOS A (311.00) Severe."

It is debatable whether Parr's counsel was deficient for failing to locate and introduce the records from Child Protective Services as well as the psychological evaluations. Nevertheless, Parr has not shown a reasonable probability that but for trial counsel's performance, the outcome would have been different. *Ransom v. Johnson*, 126 F.3d 716, 723-24 (5th Cir. 1997); *cf. Wiggins v. Smith*, 539 U.S. 510, 534-35 (2003) (holding that counsel's failure to investigate and present evidence that the petitioner "suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care" was unreasonable and prejudiced the petitioner). Parr has not "show[n] that his proposed mitigating evidence of . . . a troubled family life raises more than a mere possibility of a different outcome, and not the required reasonable probability." *Lamb*, 179 F.3d at 360 (internal quotation marks omitted).

During the punishment phase of trial, Dr. Floyd Jennings, a clinical psychologist, testified that Parr did not have stable parenting, that he was exposed to criminal activity and substance abuse by family members, that he was sexually abused, and that he had no opportunity to learn responsibility.

13

Parr's counsel also called one of Parr's former teachers who testified that Parr did not exhibit behavioral problems in her class.

The defense also called Parr's mother, Saldierna, who testified about her relationship with Parr's father. She stated that Parr's father lived with Saldierna sporadically, and that the family moved around a lot when Parr was young. She also testified that Parr has two brothers, in addition to Jimenez, that are also incarcerated. She further testified that her husband hit her and that sometimes her children had to protect her. She stated that Parr was in foster care while she was incarcerated for two years and that Parr had done well while in foster care. She also testified that Parr's father passed away while she was in prison and that Parr became detached after his father's death.

Additionally, though perhaps not as effectively as it might have been, the jury did hear evidence regarding Parr's unstable childhood from both Dr. Jennings and Saldierna. Further, the State's case on punishment was strong. In addition to the facts of the crime, the State presented evidence of Parr's prior convictions for burglary and assault, Maria Cervantes testified that Jimenez told her that he and Parr shot Malek in the back of the head twice and planned to kill the children but the gun "messed up," and Parr's parole officer testified that Parr was on parole from the Texas Youth Commission when this crime was committed. The district court correctly concluded that Parr could not show prejudice and thus, was not entitled to relief on this ground.

4.

Parr contends that his Sixth and Fourteenth Amendment rights were violated when the jury considered evidence regarding parole during their deliberations. Parr submits evidence that the jury considered whether he might be paroled much earlier and contends that the jury's consideration of this information violated his Sixth Amendment right to a fair trial. Parr's counsel during state post-

14

conviction proceedings, Gary Taylor, hired a private investigator to interview the jurors who heard

Parr's case. According to the private investigator's affidavit, the statements of five jurors indicate that

the jury was initially split 10-2, with the majority in favor of imposing the death penalty. Several

jurors believed that Parr might be paroled after a short period of time and were concerned that Parr

would be dangerous if he were released on parole.

The state habeas court refused to consider this evidence concluding that Texas Rule of

Evidence 606(b) prohibited the court from considering juror testimony except to show an improper

outside influence. Parr contends that the state court's failure to consider evidence that the jury

considered erroneous information about parole law violated his right to a fair trial. We disagree.

Although Texas law did not permit the jury to consider the issue of parole, *see Smith v. State*,

898 S.W.2d 838, 846 (Tex. Crim. App. 1995), the discussion does not require reversal unless it

deprived Parr of a fair trial, *De La Rosa*, 743 F.2d at 304. The state habeas court concluded that no

discussion of parole by the jury prevented it from being impartial. Parr has not explained how the

discussion affected the jury's impartiality except to assert that an instruction that he would be

ineligible for parole for forty years might have resulted in a life sentence rather than the death penalty.

> No clearly established Supreme Court authority holds that a defendant is entitled to
> a new trial when one juror misstates the law of parole to other jurors during
> deliberations, nor does any Supreme Court precedent obligate a state court to admit
> testimony from jurors concerning their internal discussions about parole law during
> deliberations. In fact, the existing clearly established Supreme Court case law suggests
> the opposite.

15

*Salazar v. Dretke*, 419 F.3d 384, 399-400 (5th Cir. 2005) (footnote omitted). Accordingly, the decision not to consider the juror interviews was neither objectively unreasonable nor contrary to clearly established federal law. The district court correctly denied relief on this claim.

5.

Parr also contends that the trial court's failure to instruct the jury that he would have to serve forty years before he would be eligible for parole and its refusal to allow counsel to question the venire members on the meaning of a life sentence under Texas law violated his Fourteenth Amendment rights. In *Simmons v. South Carolina*, 512 U.S. 154 (1994), the Supreme Court held that where "the only alternative sentence to death is life imprisonment without possibility of parole and the prosecution argues that the defendant will pose a threat to society in the future" due process requires that the defendant be allowed to inform the jury of his ineligibility for parole. 512 U.S. at 177 (O'Connor, J., concurring in result); 512 U.S. at 168 (plurality opinion). "*Simmons* requires that a jury be informed about a defendant's parole ineligibility only when (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000); *see also Thacker v. Dretke*, 396 F.3d 607, 617 (5th Cir. 2005) ("Since *Simmons* was decided, we have repeatedly held that neither the Due Process clause nor the Eighth Amendment requires Texas to allow presentation of parole eligibility issues, because Texas does not offer, as an alternative to capital punishment, life imprisonment without possibility of parole.") (footnote omitted).

We have previously rejected the argument that life imprisonment with parole eligibility after forty years should be treated identically to life imprisonment without the possibility of parole. *Woods v. Cockrell*, 307 F.3d 353, 361 (5th Cir. 2002). Moreover, even if we were to give *Simmons* the

16

interpretation Parr urges, "it would be a new rule of constitutional criminal procedure and thus *Teague*-barred." *Id.*; *see also O'Dell v. Netherland*, 521 U.S. 151, 165-66 (1997) (holding that extending the rule of *Simmons* would establish a new rule of constitutional law not within one of the exceptions to *Teague v. Lane*, 489 U.S. 288 (1989), and therefore inapplicable retroactively on collateral review). Accordingly, the district correctly denied relief on this claim.

6.

Parr argues that the trial court erred when it refused his request to introduce evidence on the length of time he would be required to serve before being eligible for parole after the State "opened the door." During the punishment phase, Parr's parole officer testified that Parr was paroled from the TYC after serving a little over a year for unauthorized use of a motor vehicle and that Parr was on parole at the time of the murder. Parr's counsel argued that the State opened the door to the discussion of parole. The State responded that the officer worked for the TYC and the only questions were regarding TYC parole. The trial judge then denied defense counsel's request. Relying on *Napue v. Illinois*, 360 U.S. 264, 269 (1959), Parr contends that the trial court abused its discretion by disallowing evidence "calculated to correct a false impression left with jurors." Parr does not argue that his parole officer's testimony is false, but that it misled jurors regarding the time he would serve before being eligible for parole.

The Texas Court of Criminal Appeals concluded that there was nothing in the record to indicate that the officer's testimony conveyed a false impression to the jury and that the State used the testimony for the legitimate purpose of showing Parr is beyond rehabilitation. *Parr v. Texas*, No. 73,497 at 6-7. While it is possible that the witness's reference to parole contributed to the jury's misunderstanding of Parr's parole eligibility, there is no evidence suggesting that this was in fact the

17

case; therefore, the state court's conclusion that the trial court did not abuse its discretion in refusing to permit Parr's rebuttal testimony was not unreasonable. Further, a defense witness, Dr. Jenkins, referenced the forty year requirement in his testimony. He stated that "the citizenry can be protected through life in prison, at the very least 40 years of imprisonment, I would have no objection. And, in fact, would feel like – that this circumstance warrants a life imprisonment rather than the death penalty." Accordingly, the district court did not err in denying relief on this ground.

7.

Parr argues that his Fourteenth Amendment rights were violated when the trial court denied his motion for a mistrial after the State elicited testimony about his post-arrest silence. During the State's direct examination of Texas Ranger Randy Prince, the prosecutor asked Prince about Parr's demeanor during his arrest. Prince offered a non-responsive answer that referenced an interview with Parr, which Parr's counsel objected to as non-responsive. The trial judge sustained the objection and granted trial counsel's request for an instruction to disregard. Parr's counsel moved for a mistrial and argued the statement was a comment on Parr's post-arrest silence. The trial judge denied the request. Parr argues that Prince's non-responsive answer, "During the interview–", could only have been interpreted by a rational juror to mean that Prince conducted an interview and Parr exercised his right to remain silent.

The Supreme Court has held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976). In *Greer v. Miller*, 483 U.S. 756, 766 (1987), in violation of *Doyle*, the prosecutor asked the defendant why he did not tell the police his exculpatory story when he was arrested, the Supreme Court concluded that the single

18

question followed by an immediate objection and curative instructions did not violate the defendant's due process rights.

In the instant case, unlike in *Greer*, the prosecution's question did not violate *Doyle*. The prosecutor stated: "Ranger Prince, I'm not asking you anything about any conversation that went on that evening . . . I'm asking you just what the defendant, how he appeared physically, what was his demeanor, what his emotional state appeared to be to you." The witness's response,"During the interview–", was interrupted by defense counsel's objection and followed by an instruction to disregard. The response at most informed the jury that there had been an interview, it did not give any indication as to whether Parr had exercised his right to remain silent and was not being used to impeach Parr. *See United States v. Garcia-Flores*, 246 F.3d 451, 457 (5th Cir. 2001) ("A *Doyle* violation occurs when the government comments on the defendant's silence to rebut the defendant's exculpatory story."). The statement did not violate Parr's due process rights; therefore, the district court correctly concluded that  Parr is not entitled to relief on this ground.

8.

Parr contends that his due process rights were violated when the State introduced a booking photo of his brother, Michael Jimenez. The photo was introduced for purposes of identifying Jimenez . Parr maintains that the admission of the photo is analogous to the admission of a booking photo of Parr; however, Parr cites no authority to support the proposition that introduction of a co-defendant's booking photo violates a defendant's rights. Further, in *Cook v. Beto*, 425 F.2d 1066, 1067 (5th Cir. 1970), we held that a co-defendant's appearance in a court room in jail clothing did not result in prejudice to the defendant. The state court's conclusion that Parr's rights were not violated by the

19

introduction of Jimenez's booking photo was not unreasonable; accordingly, the district court correctly denied relief on this claim.

D.

Finally, Parr requests a COA on the issue of whether the sentence of death violates his Eighth Amendment rights against cruel and unusual punishment under *Roper v. Simmons*, 543 U.S. 551 (2005), because he was 18 years and 4 days at the time of the alleged murder. Parr is presenting this claim for the first time in an application for a COA to this court. "We generally will not consider an issue raised for the first time in a COA application." *Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003). Even if we were to consider this claim, despite Parr's failure to present it first to the district court, Parr would not be entitled to relief. In *Roper*, the Supreme Court explained that

> the qualities that distinguish juveniles from adults do not disappear when an individual turns 18. . . . For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

125 S. Ct. at 1197-98. Accordingly, we deny Parr's request for a COA.

IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief and DENY Parr's request for a COA.