**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 31, 2009

Charles R. Fulbruge III
Clerk

No. 09-60293
Summary Calendar

CLIFTON CLARK,

Petitioner-Appellant,

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:05-CV-2086

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Petitioner Clifton Clark appeals the decision of the district court, dismissing his petition under 28 U.S.C. § 2254 with prejudice. At issue is the district court's conclusion that the following two decisions of the Mississippi Supreme Court, denying Clark's requests for post-conviction relief, was not contrary to or an unreasonable application of clearly established federal law as

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

determined by the United States Supreme Court. First, the Mississippi Supreme Court held that the admission of the statement of Clark's co-defendant, Michael Barnes, in violation of the Confrontation Clause, was harmless error. Second, it held that the failure of Clark's counsel to object to certain statements by the prosecutor that allegedly commented on his post-*Miranda* silence was not ineffective assistance of counsel. For the reasons set forth below, we affirm.

I.

Clark is currently serving a 54-year term of imprisonment after a Mississippi jury convicted him of armed robbery. On direct appeal, he argued that the trial court violated his rights under the Confrontation Clause by admitting, over his objection, Barnes's statement that Clark was the gunman during the robbery. The Mississippi Supreme Court agreed that the trial court had erred in admitting the statement but found that the error was harmless. *See Clark v. State*, 891 So.2d 136, 142 (Miss. 2004). Clark then moved for collateral relief in state court. In it, he alleged, inter alia, that the error was not harmless. In addition, he contended that the prosecutor violated his right to due process, as established in *Doyle v. Ohio*, 426 U.S. 610, 618 (1976), by commenting on his post-*Miranda* silence and his counsel's failure to object to those comments constituted ineffective assistance of counsel. The Mississippi Supreme Court denied this application. It found that the harmless-error claim was procedurally barred under Miss. Code Ann. 99-39-21(3) (1984). It found that the claim, challenging the prosecutor's alleged comments about his post-*Miranda* silence, was procedurally barred under Miss. Code Ann. 99-39-21(1) (1984). The Mississippi Supreme Court found that the related ineffective-assistance-of-counsel claim failed to satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Clark then filed this petition under § 2254. In the petition, he re-asserted the harmless-error and ineffective-assistance-of-counsel claims. The magistrate

judge found that the Confrontation Clause violation was harmless in light of the other overwhelming and incriminating evidence. The magistrate judge further held that the *Doyle* claim was procedurally barred but that the related claim for ineffective assistance of counsel was not. After analyzing the transcript, the magistrate judge concluded that the cross-examination at issue was not a violation under *Doyle*, 426 U.S. at 618, and that even if it was, the error was harmless. As such, he held that the Mississippi Supreme Court's rejection of this ineffective-assistance-of-counsel claim was neither contrary to nor an unreasonable application of *Strickland*, 466 U.S. at 687.

The district court adopted these findings and dismissed the petition with prejudice, but it granted a certificate of appealability on two issues: (1) whether the prosecutor improperly commented on Clark's post-*Miranda* silence and whether Clark's counsel's failure to object to those comments was constitutionally ineffective; and (2) whether the Confrontation Clause violation was harmless.[1] Clark filed a timely notice of appeal. We find that, because the prosecutor's comments did not violate *Doyle*, 426 U.S. at 618, the failure of Clark's counsel to object to those comments was not constitutionally ineffective. Furthermore, the Confrontation Clause violation was harmless. As such, we affirm the decision of the district court.

## II.

Because Clark filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2254, review of his petition is governed by the procedures and standards provided therein. *See Parr v. Quarterman*, 472 F.3d 245, 251-52 (5th Cir.2006). When a

---

[1] In his brief, Clark alleges that his appellate counsel's failure to raise the harmless-error issue was "clearly a violation of *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny, mandating the grant of habeas relief in this case." (Appellant's Brief at 11-12.) This argument is beyond the scope of review authorized by the certificate of appealability, and thus, we decline to address it here. *Kiser v. Johnson*, 163 F.3d 326, 327 n.1 (5th Cir. 1999).

state court has adjudicated a prisoner's claim on the merits, we must defer to the state court and deny the prisoner's habeas claim unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

§ 2254(d)(1)-(d)(2). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified these provisions. Justice O'Connor wrote in her majority opinion that a state court's decision

> will certainly be contrary to [the United States Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . [or] if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id*. at 405-06.

In reviewing the denial of habeas relief, the court examines factual findings for clear error, and it reviews, de novo, questions of law and mixed questions of law and fact. *Carty v. Thaler*, 583 F.3d 244, 252-53 (5th Cir. 2009) (citations omitted).

### III.

We first address Clark's claim for ineffective assistance of counsel. Our standards for evaluating such claims under *Strickland*, 466 U.S. at 687, are well established:

> First, [a defendant] must demonstrate that his attorney's performance fell below an objective standard of reasonableness. This court has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that

4

certain avenues will not be fruitful." Second, [a defendant] must also prove that he was prejudiced by his attorney's substandard performance. "[T]o prove prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (footnotes omitted) (quoting *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)). Here, Clark complains about his counsel's failure to object to the prosecutor's remarks that allegedly violated his due-process rights under *Doyle*, 426 U.S. at 618.

The Due Process Clause prohibits the prosecutor from using a defendant's post-arrest, post-*Miranda* silence to impeach the defendant's exculpatory story. *See Doyle*, 426 U.S. at 618. "Although virtually any description of a defendant's silence following arrest and a *Miranda* warning will constitute a *Doyle* violation, a prosecutor's comments must be viewed in context." *United States v. Pennington*, 20 F.3d 593, 599 (5th Cir. 1994) (citation and internal quotation marks omitted). For there to be a *Doyle* violation, the court must find that the "manifest intent" of the remarks was to comment on the defendant's silence or, alternatively, "the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *United States v. Shaw*, 701 F.2d 367, 381 (5th Cir. 1983) (citations and internal quotation marks omitted).

We agree with the district court that the remarks at issue do not meet this standard. Clark complains only about the following portions of his cross examination:

> Q: Ok. Well, you invoked your *Miranda* rights and the Fifth Amendment of the United State Constitution and refused to talk, which is your right, and I respect that. But when was the *first time* you told someone—when was the first time you told *your attorney* that you were asleep?

5

A: I can't recall exactly. I talked to my attorney off and on since this—since I've had this charge.
Q: Did you tell *your attorney* that you were asleep that night prior to yesterday?
A: Yes, sir.

(Appellant's Brief at 16-17 (citation omitted) (emphasis added).) This exchange does not reflect a manifest intent by the prosecutor to use Clark's post-*Miranda* silence to impeach his exculpatory story. Nor would a jury naturally and necessarily construe it as such. Instead, it reflects an attempt to clarify when Clark first told someone that he was sick and in bed at the time of the robbery; or it reflects an inquiry into the possibility that Clark had made prior inconsistent statements to the police and in his testimony. Indeed, the prosecutor made clear that his questions were not directed at Clark's refusal to speak to the police post-*Miranda*. And consistent with this limitation, the questions at issue focused on when Clark told *his attorney* the alibi. *Doyle*, 426 U.S. at 618, covers the use of a defendant's post-*Miranda* refusal to speak to the police; it does not cover a prosecutor's attempt to use the conversations between a defendant and his counsel.

Other portions of the transcript also show that the prosecutor was testing Clark's alibi by trying to establish when Clark first told someone that he was sick and in bed on the night in question. The magistrate judge noted that, on direct examination, Clark claimed that he was sick and in bed at the time of the robbery. The magistrate judge also pointed to portions of the transcript showing that, immediately before the complained-about exchange, the prosecutor asked, "So you've come up with the sleep idea since this trial? . . . When did you come up with the sleep idea?" Under these circumstances, we find that the district court properly concluded that there was no *Doyle* violation. As such, we affirm its finding that the Mississippi Supreme Court's decision—that defense counsel's failure to object to this exchange on *Doyle* grounds does not constitute ineffective

assistance of counsel—is not contrary to or an unreasonable application of *Strickland*, 466 U.S. at 687.

### IV.

The Confrontation Clause violation also does not merit habeas relief. Prior to trial, Barnes had told the police that Clark was the gunman during the robbery. But at trial, he testified that Clark was not with him during the robbery. Barnes explained that he had previously implicated Clark because he had believed that Clark had turned him in. Barnes then refused to testify any further, even when the trial judge ordered him to do so. Faced with Barnes's recalcitrance, the trial judge instructed the jury to disregard his prior testimony and then admitted, over Clark's objection, the statement that Barnes had given to the police. It is undisputed that this was a violation of the Confrontation Clause. The only issue before this court is whether the Mississippi Supreme Court properly concluded that the violation was harmless.

"Confrontation Clause violations are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-8 (5th Cir. 2008) (citations omitted). Such a violation is cause for habeas relief only if it had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted). In conducting this analysis, the court considers: (1) the importance of the testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case against the defendant. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994).(citations omitted). "Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless." *Id.* (citations omitted).

The district court adopted the magistrate judge's finding that the properly admitted evidence against Clark was "overwhelming." In light of this evidence,

it "[could not] conclude that the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Therefore, the district court held that the Mississippi Supreme Court's decision rejecting this claim was neither contrary to nor an unreasonable application of clearly established federal law. We agree.

Even without Barnes's statement, the prosecution's overall case was strong. Mandy Weathers, Clark's roommate at the time of the robbery, testified that she had been alone at home when the robbery had occurred, that she had checked Clark's bedroom and he was not there, and that shortly after the robbery, Clark and Barnes came into her room and told her that they had committed the robbery. She testified that Clark had given her a gun a few days earlier, and Clark told her that he had used that gun in the robbery. To corroborate Clark's claim, Weathers checked under her bed, where she had stored the gun, and found that it was missing. According to Weathers, Clark said that he would return the gun if she wanted him to, but he would prefer not to. She testified that, shortly after the robbery, Clark threatened her with a gun and told her that he would shoot her for giving the police a statement. Weathers also testified that, prior to trial, Clark offered her a bribe in return for her silence. Clark acknowledges that Weathers testified about his admission, but he fails to explain or point to any evidence of record (other than his own testimony) showing that her testimony is unreliable. (Appellant's Brief at 5-6, 14-15.)

Latosha Fairley, Clark's girlfriend at the time of the robbery, testified that she had reviewed the surveillance video of the robbery, which showed that there were two masked robbers and one of them carried a gun. She testified that the gunman's build and mannerisms resembled Clark "a lot." Fairley also testified

that Clark had confessed his involvement to her.[2] Barnes's testimony, identifying Clark as the gunman, is cumulative of Weathers and Fairley's testimonies, which reflect Clark's admission that he was the gunman during the robbery.

In addition, eyewitnesses testified that the gunman was significantly taller than his accomplice. The surveillance video, which the jurors viewed, identified the taller of the two robbers as the gunman. Both Weathers and the police investigator testified that Clark was significantly taller than Barnes (about five inches). The testimonies from Weathers, Fairley, the police investigator, and the eyewitnesses, as well as the videotape corroborate Barnes's identification of Clark as the gunman. Indeed, the only conflicting evidence was Clark's testimony, denying his involvement.

Clark relies heavily on the prosecutor's summation to demonstrate that the prosecution's case substantially relied upon Barnes's statement. While this characterization may arguably be accurate and may suggest that Barnes's testimony was important to the prosecution's case, the importance of the testimony is only one of several factors that the court weighs. As explained above, all of the other factors point to harmless error, including the most

---

[2] Shortly after Fairley testified, she informed Clark's counsel that she was no longer certain about that testimony. Clark's counsel then informed the court that Fairley would return to provide additional testimony. Accordingly, Clark's counsel urged Fairley to return to provide the recantation testimony, but she did not. Counsel also attempted to locate her but was unable to. Two days after the trial, Clark filed an affidavit from Fairley, which stated that she could no longer be certain that Clark confessed his involvement to her. Because this questionable recantation was never presented to the jury and subject to cross-examination, we will not consider it in our harmless-error analysis. *See White v. Johnson*, 153 F.3d 197, 201 (5th Cir. 1998) (explaining that the court conducts the harmless-error analysis in the context of "other evidence presented" to the jury so that the court can determine the effect that the improperly admitted testimony had on the trial). We also note that recantations are generally looked upon with the "utmost suspicion." *United States v. Smith*, 433 F.2d 149, 150 (5th Cir. 1970) (citation omitted). Such suspicion is particularly justified here given Fairley's refusal to testify to the recantation and apparent disappearance as well as the evidence that Clark had intimidated and attempted to bribe Weathers.

important factor, the overall strength of the prosecution's case. In sum, we find that, when weighed against all of the other compelling, corroborating, and incriminating evidence that was presented to the jury, the improperly introduced testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. Thus, the Mississippi Supreme Court's decision on this issue was not contrary to or an unreasonable application of *Brecht*, 507 U.S. at 637.[3]

V.

For the reasons set forth above, we AFFIRM the decision of the district court.

---

[3] Contrary to Clark's assertion, the Mississippi Supreme Court did not rely on Barnes's statement to conclude that the Confrontation Clause violation was harmless error. The court specifically stated, "*Despite* this error, *in addition to other* damaging evidence there was direct testimony at trial by [Weathers and Fairley] that Clark had confessed to committing the Amoco robbery. Therefore, due to the overwhelming weight of the evidence, we conclude beyond a reasonable doubt that the violation of the Confrontation Clause was harmless error by the trial court." *Clark v. State*, 891 So.2d 136, 142 (Miss. 2004) (emphasis added).