Revised April 16, 2001

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-41077
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LUCIO ARTURO GARCIA-FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

March 27, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Lucio Arturo Garcia-Flores contests his conviction under 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 for possession with the intent to distribute over one hundred kilograms of marijuana. Appellant argues that the record contains insufficient evidence to support his conviction, that the jury panel was prejudiced by the comments of a prospective juror, and

1

that the prosecutor committed reversible error by commenting on post-*Miranda* warning silence.

I.

On February 19, 1999, Garcia-Flores stopped his tractor-trailer at a border patrol checkpoint on Interstate 35, north of Laredo, Texas. After a canine alerted the border patrol officials to the possibility of drugs in the trailer, the agents directed Garcia-Flores to the secondary inspection area. The agents searched the trailer. The trailer contained vehicle fuse boxes, which were more than five years old and no longer sold by dealerships. Amongst the electrical supplies, the agents found 343 pounds of marijuana. Garcia-Flores told the agents that his destination was Dallas, and he did not know that he was transporting the marijuana. The evidence suggests that Garcia-Flores did not appear nervous during the search.

Gordon Jarrell, a Drug Enforcement Administration official, took custody of Garcia-Flores along with several items found in the tractor-trailer, including bills of lading and a driver's log book. A bill of lading dated February 18, 1999 showed that Garcia-Flores was transporting cargo for A.M. Logistics Services of Laredo. The bill of lading did not distinctly describe the amount or price of the cargo and did not have the correct A.M. Logistics stamp. The president of A.M. Logistics testified that there never was a shipment of goods in connection with Garcia-Flores on February 18.

2

Jarrell also discovered a bill of lading dated February 5, 1999 from Falcon Logistics of Houston. The owner of Falcon Logistics testified that he had never done business with Garcia.

Fritz Company, a Laredo business, owned the trailer in which the agents found the marijuana. The manager of Fritz Company testified that Garcia-Flores worked as an independent transfer carrier and had used Fritz Company's trailers in the past. He claimed that he did not authorize the use of the trailers on February 18.

Garcia Flores' wife claimed that she received a call the evening prior to the arrest from a man named Ramon, who instructed Garcia-Flores to pick up the trailer at A.M. Logistics Services in Laredo. Garcia Flores told Agent Jarrell during his interrogation that he retrieved the trailer from A.M. Logistics and was on his way to Dallas when he stopped at the checkpoint.

Garcia-Flores was indicted in Laredo on March 9, 1999 and charged with possession with intent to distribute marijuana. A jury failed to reach a unanimous verdict in his first trial. On July 13, 1999, a second jury found Garcia-Flores guilty. He was sentenced to serve sixty-five months in prison, a five-year supervised release term, and a special assessment of $100.

## II. Sufficiency of the Evidence

Appellant argues that the record contains insufficient evidence to support the jury's verdict. We review the evidence in the light most favorable to the prosecution, and determine whether

any reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Jones*, 185 F.3d 459, 463 (5th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979)). The jury is free to choose among reasonable inferences, but, if the evidence gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, we must reverse the conviction, as under these circumstances a reasonable jury *must necessarily entertain* a reasonable doubt." *United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999) (quoting *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)) (citations omitted; emphasis in original).

To prove that Garcia-Flores was guilty of possessing marijuana with the intent to distribute, the government was required to prove beyond a reasonable doubt that Garcia-Flores (1) knowingly (2) possessed the marijuana in his trailer (3) with the intent to distribute it. *See United States v. Ortega Reyna*, 148 F.3d 540, 543-44 (5th Cir. 1998). Garcia-Flores contests the jury's determination concerning only the knowledge element of the crime. We therefore review the evidence to ascertain whether the jury could conclude beyond a reasonable doubt that Garcia-Flores knew the trailer contained the marijuana.

A jury may infer knowledge from the defendant's control over a vehicle containing contraband unless the drugs are hidden in compartments, in which case proof of the defendant's knowledge

4

depends on inference and circumstantial evidence. *See United States v. Miller*, 146 F.3d 274, 280-81 (5th Cir. 1998); *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995). Because the border patrol agents found the drugs hidden underneath electrical supplies in the trailer, there is a "fair assumption that a third party might have concealed the [marijuana] in the [trailer] with the intent to use [Garcia-Flores] as [a] carrier . . .." *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). We therefore look to circumstantial evidence to determine whether the record supports the jury's verdict.

Garcia-Flores notes that the record fails to show he was nervous during the initial search of the trailer. The government suggests that Garcia-Flores' immediate voluntary response and his lack of nervousness is evidence of his guilt. This Court has held that both nervousness and the absence of nervousness could lead the jury to infer knowledge of the contraband when combined with other facts. *See Jones*, 185 F.3d at 464; *Resio-Trejo*, 45 F.3d at 913. Because under these facts Garcia-Flores' demeanor during the search could be as consistent with a finding of innocence as with guilt, we will not place any weight on the defendant's temperament during the search. *See Ortega Reyna*, 148 F.3d at 545-46.

The government introduced evidence at trial to conclusively show that the bills of lading found in the tractor-trailer were fabricated. The bill of lading dated February 18 identified A.M.

5

Logistic Services as the source of the cargo in the trailer. The bill of lading did not correctly identify the company or reveal the appropriate business stamp. The government also introduced a bill of lading involving a shipment of goods to Houston dated February 5. The president of the Houston business testified that his company never exchanged goods with Garcia-Flores and that this bill of lading was also false.[1]

The government claims that Garcia-Flores lied about acquiring the trailer at A.M. Logistics. Garcia-Flores told a Border Patrol agent at approximately 12:30 a.m. that he had just procured the trailer. The president of A.M. Logistics testified that the business rarely loads trailers after 11:00 p.m. and that the gates are shut and locked between 11:00 p.m. and 11:30 p.m. The U.S. Customs records show that Garcia-Flores did not even enter the United States until 10:11 p.m., after A.M. Logistics finished loading trailers during the business day.

---

[1]Appellant argues that the trial court erred by allowing the admission of extrinsic acts pertaining to the February 5 bill of lading. Rule 404(b) prohibits the admission of evidence of other crimes, wrongs or acts to prove character and conformity therewith. *See* FED. R. EVID. 404(b). Evidence of extrinsic acts may be admitted to establish knowledge or absence of mistake. The government's evidence concerning the forged bill of lading suggests that Garcia-Flores knew both bills of lading were contrived and that he or someone else forged the documents to conceal the origin, destination and description of the cargo. Because the evidence is probative of the defendant's knowledge of the drugs found in the trailer and is not outweighed by undue prejudice, the trial court did not err in allowing the government to admit evidence of the extrinsic act. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920 (1979).

The government also points to the quantity of drugs found in the trailer, asserting that drug dealers would not entrust over 300 pounds of marijuana with an unsuspecting driver. This Court has recognized that a jury may infer a defendant's guilty knowledge based on the quantity of drugs, as long as other evidence supports the inference. *See United States v. Ramos-Garcia*, 184 F.3d 463, 466 (5th Cir. 1999); *United States v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir. 1983).

In response to the government's evidence, Garcia-Flores argues that he was simply following the instructions that his wife received from a telephone conversation with a man named Ramon around 8:00 p.m. on February 8. Garcia-Flores told Agent Jarrell that he left his house in Nuevo Laredo, Mexico around 9:30 p.m. and crossed the border into the United States, where he proceeded to A.M. Logistics' address. At A.M. Logistics, he attached the trailer and began his journey to Dallas on Interstate 35. He notes that the president of A.M. Logistics did not know how many people had access to the property after business hours. He also presented the testimony of a shipping business owner who claimed that most drivers are not involved in loading cargo and many do not check their cargo before leaving.

After reviewing the record and placing all the evidence and inferences in the light most favorable to the government's case, we are persuaded that there is sufficient evidence in the record for

the jury to conclude beyond a reasonable doubt that Garcia-Flores knew the trailer contained illegal drugs.

III. Comments Involving Defendant's Post-*Miranda* Silence

In *Doyle v. Ohio*, the Supreme Court held that the Due Process Clause prohibits the government from using a defendant's post-arrest, post-*Miranda* silence to create an inference of guilt. *See* 426 U.S. 610 (1976); *Chapman v. United States*, 547 F.2d 1240 (5th Cir.), *cert. denied*, 431 U.S. 908 (1977); *United States v. Carter*, 933 F.2d 1449, 1462 (5th Cir. 1992). We review *Doyle* violations under the doctrine of harmless error by determining whether the error was harmless beyond a reasonable doubt. *See United States v. Moreno*, 185 F.3d 465, 472 (5th Cir. 1999). "We also seek to determine whether the remark was a spontaneous comment by the witness or a comment prompted by the prosecutor." *Id.* (citing *United States v. Smith*, 635 F.2d 411, 413 (5th Cir. 1981). This Court has set out three categories to help determine whether a constitutional violation has occurred:

(1) When the prosecution uses defendant's post arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

8

(2) When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i.e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

(3) When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

*Chapman*, 547 F.2d at 1249-50 (citations and footnote omitted).

Garcia-Flores points to two instances, which taken together allegedly constitute a *Doyle* violation. The first occurred during the government's direct examination of Gordon Jarrell, the DEA agent who questioned Garcia-Flores during the morning of his arrest.

Q: Okay. And did you ask him from whom he picked [the trailer] up --

A: I did.

Q:     -- at 502 Enterprise?  You did?

A:     I did.

Q:     And what did he say?

A:     From the man.

Q:     Okay.  And did you ask him, of course, the next
       question would be what man did you ask him what?

A:     I did.

Q:     Okay. And what did he say?

A:     That he wanted an attorney.

Q:     Okay.  Well as far as his statement that he made,
       what was his statement as far as the man?

A:     From the man.

Q:     Okay.  That was it?

A:     The man that was there that's --

Q:     Okay.

A:     -- all that he would say.

Q:     Okay.  Now did you ask for a name?

A:     I did.

Q:     Okay.  Did you ask for a description of this man?

A:     I did.

Q:     Were you given one?

A:     No sir.

The second alleged error occurred during the government's closing
statement.

       . . . He says, I just picked it up.  And who did you

10

pick it up from?  I just picked it up.  And who did you pick it up from?  I just picked it up from the man that was there.  All right.  Agent Jarrell being the good DEA investigator that he is, says well, what man?  The man that was there.  Can I have a description of the man?  The man that was there.  That is another circumstance.  Because if you closely examine that, that doesn't mean much.  Is it something that's consistent with somebody that really doesn't know that he was carrying marijuana in the trailer or is it something consistent with someone that does know and doesn't want to say anything about where he picked it up.

* * *

Now the important thing about that is that Mr. Garcia doesn't mention any Ramon at the checkpoint.  If he really didn't know about this marijuana being in the trailer, that's probably one of the first red flags that would pop in the mind as an experienced truck driver.  Well I don't know - I don't know it - I didn't know that there was 345 pounds of marijuana.  Ramon called me at home.  Did he say that?  No, he doesn't say that, but now they want this - officer . . ..

In both instances, counsel for the defendant failed to object or move for a mistrial.

11

When a defendant fails to object to a prosecutor's alleged unconstitutional comment on a defendant's silence, we review the record for plain error. *See Carter*, 953 F.2d 1449, 1463; *Cardenas Alvarado*, 806 F.2d at 573. "Plain error occurs when the error is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation of judicial proceedings and would result in manifest injustice." *United States v. Mizell*, 88 F.3d 288, 297 (5th Cir.), *cert. denied*, 519 U.S. 1046 (1996). "[A] conviction can be reversed only if there was a 'manifest miscarriage of justice,' which would occur if there is no evidence of the defendant's guilt or 'the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *United States v. Villasenor*, 236 F.3d 220, 222 (5th Cir. 2000) (quoting *United States v. McCarty*, 36 F.3d 1349, 1358 (5th Cir. 1994)).

The gravamen of Garcia-Flores' alleged *Doyle* violation focuses on a portion of the government's closing statement, which fits into the first category set out in *Chapman*. The government alluded to Agent Jarrell's testimony concerning Garcia-Flores' refusal to describe the man from whom he received the cargo. The comment by the government in its closing statement pertaining to Garcia-Flores' failure to describe the man from whom he obtained the cargo fits into the first category set out in *Chapman*. The reason Garcia-Flores did not describe the man in detail was because,

according to the testimony of Agent Jarrell, he asserted his right to counsel. A *Doyle* violation occurs when the government comments on the defendant's silence to rebut the defendant's exculpatory story. Clearly the intent of the government in its closing statement was to create an inference from Garcia-Flores' refusal to accurately describe the man. *See United States v. Shaw*, 701 F.2d 367, 381 (5th Cir. 1983), *cert. denied*, 465 U.S. 1067 (1984). However, in light of the strength of the government's remaining evidence and the limited context in which the violation occurred, we do not think that failure to correct the error will result in a manifest miscarriage of justice or will affect the fairness, integrity, or public reputation of judicial proceedings. We therefore choose not to correct the error on appeal.

## IV. Prejudicial Comments in Voir Dire

Appellant's final point of error raises the issue of whether comments by a prospective juror had a prejudicial affect on the jury panel that could not be cured by a judge's instruction. Garcia-Flores complains that a prospective juror declared that he was a truck driver and could not believe that another driver would fail to check his cargo or notice such a large amount of marijuana. The record shows that there was laughter among members of the jury panel in response. When the judge excused the prospective juror, several members of the panel applauded. Defense counsel moved for a mistrial.

13

The judge then issued a lengthy curative instruction in which he assured the jurors that cases involving knowledge of drugs within vehicles often result in differing verdicts. He asked the jury panel whether any of them believed that a truck driver should know exactly what he is hauling at all times. The prospective jurors gave no response. The judge reminded the prospective jurors that they were under oath and asked the question again. No one responded. The judge proceeded to explain how it is possible that a driver could not know the character of his cargo. After asking the prospective jurors once more and receiving no response, the judge continued with the jury selection process. At the end of voir dire, counsel for the defendant resubmitted his motion for mistrial, which the court denied.

We have recognized that a district court has broad discretion to conduct the voir dire examination of a jury panel. *See United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). "[A]bsent an abuse of discretion and showing that the rights of the accused have been prejudiced thereby, the scope and content of voir dire will not be disturbed on appeal." *United States v. Black*, 685 F.2d 132, 134 (5th Cir. 1982). The district judge was in the best position to evaluate the reaction of the jury panel to the prospective juror's comments and the affect of his curative instruction. We find that the district judge's thorough curative instruction adequately ensured the integrity of the jury pool. We

14

therefore deny Garcia-Flores' relief sought on appeal and affirm his conviction.

AFFIRMED