**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 17, 2012

Lyle W. Cayce
Clerk

No. 10-51194

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ABRAHAM ISIDRO VARA

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:09-cr-01144

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Abraham Isidiro Vara was convicted by a jury of knowingly importing marijuana, 21 U.S.C. §§ 952(a), 960(a)(1), (b)(4); and knowingly possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(D), and sentenced to thirty-three months imprisonment. On appeal, Vara argues that the district court erred in denying his motion for judgment of acquittal on the ground that the government failed to introduce sufficient evidence to support a finding beyond a reasonable doubt that he knew that the used car he had

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

recently bought contained marijuana concealed in hidden compartments. We conclude that the evidence was insufficient to prove the requisite scienter beyond a reasonable doubt. Accordingly, we REVERSE Vara's conviction.

**BACKGROUND**

On August 20, 2009, Vara, a United States citizen, drove from Mexico to the U.S. border checkpoint at Eagle Pass, Texas. The primary inspection officer referred Vara to secondary inspection.[1] At secondary inspection, Customs and Border Protection Agent Felix Garza questioned Vara about his itinerary. According to Agent Garza, Vara presented his U.S. passport and stated that he had been on a visit in Mexico and that he was going to Houston, Texas. The government introduced no evidence regarding Vara's home address or the purpose or duration of his visit to Mexico. Agent Garza noticed "a slight shakiness in [Vara's] hands" when Vara presented his passport. Vara told Agent Garza that he had purchased the car he was driving — a 1995 Chevrolet Monte Carlo with Texas license plates — three days before "from some guy" in Mexico for $1000. Agent Garza did not testify that he asked Vara for a title or proof of insurance relating to the car, nor did he testify that he asked Vara any follow up questions regarding the identity of the individual Vara had purchased the car from. Agent Garza noticed during the questioning that Vara "was avoiding eye contact several times." During a canine search of the car, the dog showed interest in the back seat. Agent Garza inspected the back seat area but found nothing. However, x-ray imaging revealed brick-like objects in the car's rear quarter panels. Agents removed the upholstered surface on the interior of the

---

[1] The government offered no evidence regarding what reason, if any, led the primary inspection officer to refer Vara to secondary inspection. According to one of the government's witnesses, approximately forty percent of vehicles are referred to secondary inspection on any given day.

rear quarter panels and discovered 19.11 kilograms of marijuana concealed in hidden compartments. No effort was made to lift fingerprints from the compartments or the packages of marijuana. The record does not indicate whether Vara was ever asked whether he knew of the existence of the hidden compartments or the marijuana concealed within. Immigration and Customs Enforcement Agent Christopher Conley testified that the marijuana would sell for approximately $12,000 in Texas.

Agent Garza testified that a "border crossing record," which the government introduced without objection, indicated that Vara had previously crossed into the United States at Eagle Pass driving the same Monte Carlo on August 19, 2009, the day before his arrest. Agent Conley testified without objection about a drug smuggling practice he referred to as "burning plates," whereby an individual intending to smuggle drugs from Mexico into the United States crosses the border without drugs shortly before the operation, in the vehicle he or she intends to use to smuggle drugs, to determine whether the vehicle attracts the notice of border patrol agents at the checkpoint. Agent Conley did not express any opinion or conclusion about whether Vara was "burning plates" on his first border crossing. Agent Conley also testified that he had recently confirmed that Vara visited the Fred Loya auto insurance agency in Eagle Pass on August 19, 2009 after entering the United States. There is no indication in the record of why Agent Conley contacted the insurance agency, how he confirmed that Vara had visited the insurance agency, or whether he determined if Vara had purchased auto insurance that day.

The Texas Certificate of Title to the Monte Carlo, which Vara's attorney introduced into evidence without objection by the government, was not made out in Vara's name. Instead, the document indicates that as of June 30, 2008 — the date the title was issued — the vehicle's "previous owner" was Jose Luis

3

Hernandez of Eagle Pass, Texas, and that the "owner" was Blanca M. Quintero, of 2173 Del Rio Boulevard in Eagle Pass. The government does not contest the validity or authenticity of the certificate of title. Indeed, in its closing argument, the prosecution stated to the jury that "[t]he title hasn't been changed over" and that the government "d[oes not] dispute [that] the title is in a different owner's name."

The government presented only two witnesses at trial, Agent Garza and Agent Conley. In addition to the border crossing record, the government introduced several photographs of the Monte Carlo, the dismantled hidden compartments, and the marijuana. At the close of the government's evidence, Vara moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government had failed to present evidence beyond mere possession and control of the vehicle that could support a finding of knowing possession of the marijuana beyond a reasonable doubt. The district court denied Vara's Rule 29 motion. Vara did not testify, and his attorney introduced into evidence only the above-referenced motor vehicle title certificate.

The jury found Vara guilty, and the district court sentenced him to thirty-three months imprisonment. Vara timely appealed.

## STANDARD OF REVIEW

Because Vara moved for a judgment of acquittal at the close of the government's case, we review his sufficiency claim de novo. *See United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007). "The standard of review for sufficiency of the evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In conducting this inquiry, we must examine the evidence as

4

a whole . . . , drawing all reasonable inferences to support the verdict." *United States v. Charles*, 469 F.3d 402, 407 (5th Cir. 2006). "[T]he evidence presented must allow the jury 'to find every element of the offense beyond a reasonable doubt.'" *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (5th Cir. 2006) (quoting *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003)). "A conviction must be overturned if it is based on speculation alone: '[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.'" *Id.* at 333-34 (alteration in original) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)). "Accordingly, if the evidence presented, taken in the light most favorable to the Government with all inferences drawn favorably in support of the verdict, is not enough for any rational trier of fact to find every element satisfied beyond a reasonable doubt, the convictions must be vacated." *Id.* at 334.

## DISCUSSION

Both offenses Vara was charged with required the government to prove that he knowingly possessed the marijuana discovered in his vehicle. "Knowledge can be inferred from control of the vehicle in some cases," *United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008), "but the control of the vehicle will suffice to prove knowledge only where the drugs 'are clearly visible or readily accessible,'" *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994) (quoting *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988)). Where drugs are concealed in some way, this court "requires that in addition to mere presence in the vehicle, or control over it, there be circumstances evidencing a consciousness of guilt on the part of the defendant." *United States v. Gonzalez-Lira*, 936 F.2d 184, 192 (5th Cir. 1991); *accord Rojas Alvarez*, 451 F.3d at 334 (stating that "where, as here, the contraband was secreted in a

hidden compartment, this court requires additional evidence to prove the knowing element, such as a consciousness of guilt, conflicting statements, or an implausible account of events" (citing *United States v. Rodriguez*, 993 F.2d 1170, 1175 (5th Cir. 1993)).

This court has previously recognized various types of circumstantial evidence from which a trier of fact may, but is not required to, infer that the defendant had the requisite knowledge. "Such evidence may include nervousness, conflicting statements to law enforcement officials, and an implausible story." *United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir. 2005) (per curiam) (internal quotation marks omitted). Another "example of circumstantial evidence which may be probative of knowledge is the value of the drug being transported." *Villarreal*, 324 F.3d at 324. "No single piece of circumstantial evidence need be conclusive when considered in isolation;" instead, we must ask "whether the evidence, when considered as a whole," is sufficient to permit a rational jury to make a finding of knowledge beyond a reasonable doubt. *United States v. Miller*, 146 F.3d 274, 281 (5th Cir. 1998).

The government points to three factors that it argues provide a basis for a rational finding of guilty knowledge beyond a reasonable doubt. First, the government points to Agent Garza's testimony regarding a slight shakiness in Vara's hands and his failure to maintain eye contact during questioning. This court has explained that "[i]n the absence of facts which suggest that the defendant's nervousness or anxiety derive from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge." *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). Moreover, we have repeatedly cautioned that, "[b]ecause nervousness is 'a normal reaction to . . . being stopped at a border[,] . . . anxiety is inconclusive *unless* viewed in the context of other facts' indicating guilty knowledge." *United*

*States v. Ramos-Garcia*, 184 F.3d 463, 466-67 (5th Cir. 1999) (ellipses and second alteration in original) (quoting *United States v. Williams-Hendricks*, 805 F.2d 496, 500 (5th Cir. 1986)).  Here, Agent Garza testified that, "as [Vara] was giving me the passport I did notice a slight shakiness in the hands,"  and that "when I asked [Vara] my questions I noticed that [Vara] was avoiding eye contact several times."  However, Agent Garza also acknowledged that "the fact that an older man's hand shakes when he gives you something doesn't say that he is nervous or he is guilty of anything."  Moreover, there was no evidence regarding what, if any, reaction Vara had after the concealed marijuana was discovered.  While Agent Garza's testimony could lend support to an inference of generalized nervousness on Vara's part, it does not indicate the existence of any facts suggesting that such nervousness derived from an underlying consciousness of criminal conduct.  *See Diaz-Carreon*, 915 F.2d at 954; *see also Ortega Reyna*, 148 F.3d at 545 ("The government . . . emphasizes that when asked whether he was aware of the presence of the drugs, Ortega hesitated — for an estimated fifteen seconds — before answering that the truck did not belong to him.  Such a momentary delay is truly indicative of nothing in this context.  Ortega's single hesitation and downward glance fall well short of the generalized hesitancy to answer questions or delayed responses that we [have] accepted as circumstantial evidence of guilty knowledge . . . .").

Next, the government points to the weight and value of the marijuana discovered in the hidden compartments. "This Court has recognized that a jury may infer a defendant's guilty knowledge based on the quantity of the drugs[] [concealed in a hidden compartment,] as long as other evidence supports the inference." *United States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001).  In those hidden compartment cases in which this court has taken the quantity of drugs into account, the quantity or value of drugs involved has been large, and

there has been other circumstantial evidence lending additional support to an inference of knowledge. *See, e.g.*, *Villarreal*, 324 F.3d at 324-25 (evidence showed that defendant was transporting "more than 600 pounds of marihuana, . . . conservatively valued at more than $300,000," and had made "inconsistent statements, false exculpatory statements, and implausible explanations as to how he came to be hauling a vehicle loaded with marihuana"); *United States v. Gamez-Gonzalez*, 319 F.3d 695, 698-99 (5th Cir. 2003) (agents discovered concealed cocaine "weighing approximately 123 kilograms, with a street value of approximately $9 million," and other evidence established, inter alia, that the defendant was carrying "$1,600, an amount consistent with that advanced to drivers transporting cocaine"); *Garcia-Flores*, 246 F.3d at 455 ("agents found 343 pounds of marijuana" hidden in defendant's truck, and other suspicious evidence included false statements and a falsified bill of lading); *Ramos-Garcia*, 184 F.3d at 465-66 (evidence of "70 pounds of marijuana in a hidden compartment . . . len[t] support to" a jury finding of guilty knowledge only because that finding was strongly supported by the defendant's implausible explanation that "when presented with the opportunity to earn $500 by driving an empty truck four miles across the U.S.-Mexico border," he failed to "conclude that the truck [was] likely to carry drugs"); *Del Aguila-Reyes*, 722 F.2d at 157 (although lone fact that cocaine discovered in hidden compartment had "wholesale value [of] approximately five million dollars . . . might well not support a finding of guilty knowledge," other evidence indicated that defendant "had made this same trip for [his employer] on at least three other occasions" and showed a "lack of concern and surprise upon being told that cocaine had been found in the vehicle he was driving"). Here, by contrast, "the contraband was valued at a fraction of the amount found" in our prior cases in which the value of concealed drugs has been considered a suspicious circumstance lending support to a rational

inference of guilty knowledge. *See Rojas Alvarez*, 451 F.3d at 335. Agent Conley testified that the 19.11 kilograms of marijuana recovered from the secret compartments in the Monte Carlo would be worth approximately $12,000 if sold in Texas. However, Agent Conley also testified that marijuana is worth considerably less than that in Mexico.[2] Moreover, unlike as in cases such as *Villarreal* and *Ramos-Garcia*, here "there are no conflicting statements or actions indicative of a desire to mislead authorities." *See id.* at 335; *see also id.* 335 (explaining that "the *Villarreal* court focused more on the defendant's inconsistent statements than the weight of drugs in the car in concluding that circumstantial evidence supported his guilty verdict" (citing *Villarreal*, 324 F.3d at 325)).[3] Therefore, as in *Rojas Alvarez*, "[b]ecause of the absence of additional

[2] The dissent speculates that the hidden compartments themselves constituted a valuable asset that in effect placed more on the scale, such that Vara's possession of a vehicle with both drugs and hidden compartments constitutes a suspicious circumstance lending support to a reasonable inference of knowledge. However, we have consistently held that in cases in which drugs are discovered in a hidden compartment in a vehicle, a finding of knowing possession "requires *other* circumstantial evidence 'that is suspicious in nature or demonstrates guilty knowledge,'" *in addition to* the defendant's possession of the vehicle in which the hidden compartment and the concealed drugs are discovered. *United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008) (quoting *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993)). "Indeed, the [dissent]'s argument would all but eliminate the knowledge requirement each time a hidden compartment merely existed. It is enough to note that we have required more than the existence of a hidden compartment to prove that a defendant knew about the compartment's contents." *Rojas Alvarez*, 451 F.3d at 335. In any event, in this case the government presented no evidence or argument regarding the potential "value" of the hidden compartments. *See id.* at 335-36 ("To infer that [the defendant] was aware of the compartment's contents presumes that he was aware of the compartment's existence. But there is no evidence to that effect. Nor is there evidence that the compartment was created by or for [the defendant] for any illicit purposes.").

[3] The dissent asserts that Vara made evasive or implausible statements. However, "the record does not contain, and the Government [has not even attempted to] identify any 'inconsistent statements, false exculpatory statements, [or] implausible explanations' made by [Vara] from which a jury might infer that he was aware of the hidden contraband." *See Rojas Alvarez*, 451 F.3d at 336 (citation omitted) (quoting *Villarreal*, 324 F.3d at 325)). "None of [Vara]'s statements exhibit 'characteristics of a consciousness of guilt.'" *See id.* (quoting *Rodriguez*, 993 F.2d at 1176) (some internal quotation marks omitted).

circumstantial evidence and the disparity in the quantum of drugs found — both in terms of volume and value — we decline to extend [those cases to] the facts before us." *Rojas Alvarez*, 451 F.3d at 335.

Finally, the government argues that because Vara "had owned the vehicle for three days and had even crossed the border previously[,] . . . [t]he jury could have . . . made a common sense determination that his travel patterns were erratic [and aimed at] making continuous monitoring unfeasible." Gov't Br. 10. However, there was nothing inconsistent or implausible about Vara's uncontradicted account — related to Agent Garza at the border checkpoint — that he had purchased the car three days before and was driving to Houston. Indeed, the other evidence corroborates, rather than contradicts, that account. Agent Conley verified that Vara had visited an auto insurance agency in Eagle Pass the day before he was stopped. The Texas title to the car, which also had Texas license plates, was introduced into evidence by Vara's attorney without objection by the government. The title was still in a prior owner's name and indicated that each of the last two owners lived in the border town of Eagle Pass, although the record does not reveal that any government agent made any effort to contact either of these individuals in order to confirm or refute Vara's statement to Agent Garza regarding his purchase of the Monte Carlo. This evidence tends to corroborate Vara's statement to Agent Garza that he had just purchased the vehicle, and to support the notion that he had done so innocently. The dissent contends that the jury could have concluded that Vara's travel was suspicious because consistent with an attempt to "burn the plates" of the vehicle, as in the practice described by Agent Conley in his drug courier profile. However, such a conclusion would be based upon speculation, rather than upon a reasonable inference from evidence in the record, and a "verdict may not rest

10

on mere suspicion, speculation, or conjecture[] . . . ." *Rojas Alvarez*, 451 F.3d at 333-34 (alteration in original) (quoting *Pettigrew*, 77 F.3d at 1521).

In sum, viewed as a whole and in the light most favorable to the verdict, the combination of the evidence of generalized nervousness, the value of the marijuana, and Vara's travel to an Eagle Pass insurance agency the day before he left for Houston was, altogether, insufficient evidence for a rational jury to find beyond a reasonable doubt that Vara knew about the hidden compartments in the Monte Carlo and therefore knowingly possessed the marijuana concealed therein. "Because the Government could not identify record evidence on which a rational trier of fact could rely to find every element of [Vara]'s charge[s] satisfied, we [must] vacate [his] convictions." *Rojas Alvarez*, 451 F.3d at 333. Our conclusion is reinforced by comparing the circumstantial evidence here to that in *Ortega Reyna*, which we likewise held insufficient to permit a reasonable inference of guilty knowledge. *See Ortega Reyna*, 148 F.3d at 540. There, the evidence included that the visibly oversized right rear tire of the truck the defendant was driving "caus[ed] the truck to 'list' to the left" and "lean[] to one side," *id.* at 542, 547; that the tire contained "over sixteen pounds of amphetamines and fourteen ounces of heroin," *id.* at 542; "that when asked whether he was aware of the presence of the drugs, [the defendant looked down and] hesitated — for an estimated fifteen seconds — before answering that the truck did not belong to him," *id.* at 545; and that "[the defendant] possess[ed] . . . over $700 in cash at the time of his arrest," *id.* at 547. The circumstantial evidence the government relies upon here is even weaker than that we held insufficient in *Ortega Reyna*.

The insufficiency of the evidence presented at trial is underscored by the many gaps in the government's case. Critical questions went unasked and

11

unanswered. Most strikingly, there was no testimony regarding whether Vara was present when the hidden compartments and the concealed marijuana were discovered; if so, whether he had any reaction to the discovery; or whether he was ever even asked by any officer whether he knew about the compartments or the marijuana or offered any explanation for their presence in the Monte Carlo. Although Agent Garza testified that Vara stated he had just purchased the car in Mexico, there is no indication that Agent Garza ever asked for a bill of sale, title papers, or proof of insurance. Agent Conley testified that he had recently confirmed that Vara went to the Fred Loya auto insurance agency in Eagle Pass on August 19, the day before he was stopped, but there is no evidence that the authorities sought to determine whether Vara purchased auto insurance that day. There is also no evidence regarding — and no indication that government investigators attempted to find out — where Vara resided or worked, whether he had previously patronized the Fred Loya office in Eagle Pass or had an auto insurance agent elsewhere, how Vara arrived in Mexico prior to purchasing the Monte Carlo, or even whether Vara previously owned a car. There is no indication that any law enforcement officer contacted the two former owners of the Monte Carlo, although the title indicated that both resided in Eagle Pass and even provided a street address for the most recent owner. The government does not contest the validity or authenticity of the title. Agent Garza testified that he could not remember whether the car contained any personal effects or luggage besides a cooler of cheese and tortillas. He did not perform an inventory of the car, and did not know whether any other agent performed one; no documentation of any inventory was introduced into evidence.[4] The record does

---

[4] *Cf. Ortega Reyna*, 148 F.3d at 546 ("[E]ven though [government] agents asserted that standard procedure would call for the taking of a full, written inventory of the . . . vehicle at the checkpoint, the government — curiously — chose not to produce such a writing at trial,

not reveal whether agents failed to seek such information during their questioning of Vara at the border and any subsequent investigation, or whether the government simply failed to elicit this evidence at trial. In either case, the resulting record is so sparse and inconclusive that we must conclude that no rational jury could have found beyond a reasonable doubt that Vara knew about the concealed marijuana or the hidden compartments.

We close by briefly addressing the remaining arguments raised by the dissent. The dissent contends that it is unlikely that Vara was used as an unknowing carrier by drug smugglers because Vara admitted that he had recently purchased the car, rather than having borrowed it, and because it would have been difficult for smugglers to locate and repossess the car. The dissent thus focuses on attacking the plausibility of one hypothetical circumstance that would be consistent with a lack of guilty knowledge, rather than on the relevant question of whether or not the evidence presented was sufficient to permit a rational jury to infer guilty knowledge beyond a reasonable doubt. Vara, of course, had no burden to establish who else might have concealed the marijuana in the car, or when. Moreover, Vara did not testify, and his theory at trial was simply that the government failed to carry its burden of proving knowing possession beyond a reasonable doubt.

Aside from being irrelevant, the dissent's speculations regarding why a "cat's paw" theory of innocence would have been implausible are unconvincing even on their own terms. First, the dissent mischaracterizes *Ortega Reyna* as suggesting that the requirement of additional circumstantial evidence demonstrating guilty knowledge is weakened here by the fact that Vara had

---

thus failing to adduce affirmative documentary evidence that the [defendants] did not have luggage and thereby settle this contested fact.").

purchased the car only days before his arrest. In fact, the cited passage of *Ortega Reyna* explains that the need for additional evidence is "*heightened when*[] . . . the vehicle has . . . been in the possession of the suspect for only a short time." 148 F.3d at 544 (emphasis added). Second, the dissent's speculations that drug smugglers operating along the Mexican border would be incapable of tracking their contraband, and would have great difficulty in repossessing the vehicle by force or theft, are dubious at best and unsupported by any evidence introduced in this case. Lastly, even if the dissent's speculations regarding the plausibility of a "cat's paw" theory were more persuasive, there are any number of other circumstances whereby an unsuspecting individual might end up purchasing a car that, unbeknownst to the purchaser, contained concealed contraband, particularly given the levels of drug-related violence in the border region.

Again, however, the question in this case is emphatically *not* the plausibility or implausibility of any hypothetical theory of innocence but simply whether the evidence the government presented was constitutionally sufficient to permit a rational finding, beyond a reasonable doubt, that Vara knowingly possessed marijuana. *See, e.g.*, *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (explaining that "the evidence [need not] exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt"); *Rojas Alvarez*, 451 F.3d at 337 ("Leaving aside [the defendant's] theory of the case, and based only on the evidence presented, the arguments made by the Government, and the inferences that could be drawn from that evidence, a reasonable jury could not conclude *beyond a reasonable doubt* that the elements of the crime have been proven." (footnote omitted)). Because "[o]ur review of the record convinces us that[,] . . .

14

viewed . . . globally[,] the evidence that [Vara] *knowingly* possessed the drugs in question fails to satisfy the constitutional standard of guilt beyond a reasonable doubt," Vara's conviction must be reversed. *See Ortega Reyna*, 148 F.3d at 547.

## CONCLUSION

After considering all the evidence and drawing all reasonable inferences in the light most favorable to the prosecution, we conclude that no rational jury could have found every essential element of the crimes charged beyond a reasonable doubt. Therefore, Vara's convictions and sentences are REVERSED.

No. 10-51194

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

The evidence shows that Abraham Isidro Vara, a resident of Houston, purchased a car in Mexico, then quickly drove it back-and-forth across the border on two consecutive days, and on the second time he was discovered to be carrying $12,000 worth of illegal drugs in a hidden compartment. Vara exhibited signs of nervousness at the border checkpoint and gave answers that could only be considered either evasive or implausible. Moreover, Vara's ignorance of the contents of the hidden compartment is credible only to the extent one credits the far-fetched theory that he was used as a cat's-paw in a drug trafficking scheme he knew nothing about, despite the awkward fact that any trafficker using him as mule would have had to follow him, gain possession of his car, and partially dismantle the car in order to retrieve the drugs. Despite these facts, the majority sets aside the perfectly reasonable jury verdict finding Vara guilty of knowingly importing and possessing with the intent to distribute marijuana.

We have previously stated in hidden compartment cases that control over the vehicle containing the drugs must be "supplemented by other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999) (internal quotation marks omitted). "This requirement stems from our recognition that, in hidden compartment cases, there is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." *United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998). But we have also recognized that the "fair assumption" is not equally applicable to all hidden compartment

cases. *See id.* The specific circumstances make it especially unlikely that Vara was used as an unwitting carrier.

First, Vara claimed to own the car that he was driving. Neither Vara nor the majority cites a single hidden compartment case that has overturned a conviction of the owner of the car used to smuggle drugs. And there is good reason for this—to credit the assumption that a third party was using the defendant as an unknowing carrier, there needs to be a plausible theory for how the third party planned to retrieve his drugs. For example, in *Ortega Reyna*, upon which the majority heavily relies, the defendant was borrowing the loaded vehicle from a friend and had prearranged to return the truck to its owner on the U.S. side of the border. 148 F.3d at 542–43. Vara, on the other hand, claimed to have owned the loaded car, negating the possibility that any plan existed to return the car to the "guy" who had sold it to him in Mexico.[1] In fact, none of the circumstances indicate any plausible way a third-party trafficker could have reclaimed the drugs stashed in Vara's car without his knowledge and cooperation.

Second, the specific hidden compartment in Vara's car was only accessible by partially dismantling the car's interior. This means that in order to retrieve the marijuana, a third-party trafficker using Vara as a transporter would not only have to follow Vara, but gain possession of his car for a long enough period

---

[1] The majority over-extends *Ortega-Reyna* by treating its statement that the need for additional evidence of knowledge is "heightened" when the vehicle has been in the suspect's possession for only a short time as applicable regardless of whether the suspect owns the car. In *Ortega-Reyna,* the short time of possession, coupled with the lack of ownership, indicated a likelihood that the defendant had no knowledge of the secreted drugs. As explained, the unwitting carrier possibility is significantly less plausible where the suspect owns and controls the vehicle.

17

No. 10-51194

to dismantle and reassemble it, all without Vara's knowledge. Third, Vara's statements at the border checkpoint indicated that he did not know the person who sold him the car. If the jury credited Vara's story,[2] it further undercuts the plausibility of the unwitting-dupe theory because any supposed third-party trafficker would have even greater difficulty tracking, acquiring, dismantling, and reassembling the car of a man he did not even know. All of these circumstances constitute the kind of additional "circumstantial evidence that is suspicious in nature" that supplements possession to prove knowledge and defeat the "fair assumption" in hidden compartment cases.

The majority responds to the implausibility that Vara was used as an unwitting carrier by asserting that the unwitting carrier theory is just "one hypothetical circumstance that would be consistent with a lack of guilty knowledge." But this characterization is at odds with the entirety of our hidden compartment jurisprudence, which has uniformly treated the unwitting carrier possibility as the specific rationale for crediting the "fair assumption" that a defendant might not know of the concealed drugs. *See, e.g.*, *Ortega Reyna*, 148 F.3d at 544. That the unwitting carrier possibility is more than just "one hypothetical" theory of innocence in hidden compartment cases is sufficiently demonstrated by our cases holding that a valuable quantity of drugs is evidence of knowledge due to the unlikelihood that a third-party trafficker would entrust something so valuable to an unwitting carrier—a rule that is comprehensible only in light of the fact that the unwitting carrier theory is what justifies the

---

[2] As explained below, the jury may not have credited Vara's story that he bought the car for $1000 from "some guy." The jury was free either to believe Vara's story, and count his ownership as evidence of knowledge, or to reject it as implausible, and count his implausible tale as evidence of knowledge.

heightened evidentiary requirement in the first place. *See, e.g.*, *United States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001). Of course, in ordinary cases, control over the loaded vehicle is enough to prove knowledge beyond a reasonable doubt. Thus, the eroding plausibility of the unwitting mule theory pushes a case back toward the general rule that control is sufficient and reduces the amount of additional circumstantial evidence needed to sustain a conviction.

The majority asserts that there also are "any number of other circumstances whereby an unsuspecting individual might end up purchasing a car that, unbeknownst to the purchaser, contained concealed contraband." No doubt, the majority can imagine a number of stories that it concludes are consistent with the evidence, but the question is whether any of those imaginings represents such a likely explanation that all reasonable jurors would have to retain a reasonable doubt about the government's obviously plausible theory of the evidence. In an ordinary possession case, in which control is sufficient to support a conviction, it is invariably true that there are "any number of other circumstances whereby an unsuspecting individual might end up" with drugs, say, in his trunk. But because all those imaginable circumstances are usually so much less plausible than the explanation of guilt, they do nothing to unsettle the reasonableness of a jury's guilty verdict. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996).

Not only is the unwitting mule theory incredible, the evidence also shows that Vara had crossed from Mexico into the United States and back again on the

day immediately preceding his arrest. This is consistent with the practice, described at trial by Agent Conley, of "burning plates," whereby someone intending to import drugs into the country crosses the border a day before to ensure that the vehicle he intends to use does not raise any "alerts or hits" at the checkpoint. That Vara crossed the border on consecutive days does not, by itself, establish that he knew he was carrying drugs, but it certainly constitutes the type of "circumstantial evidence that is suspicious in nature" that gives additional support to a jury verdict. The majority asserts that finding this behavior suspicious is mere speculation, but it does not explain why it is speculation rather than a permissible inference from the evidence in the record. Moreover, Vara told a story at the border checkpoint that the jury could reasonably conclude was implausible. Vara explained that he had purchased the Monte Carlo three days earlier from "some guy" for $1000. It is unlikely that someone who had purchased a car only three days earlier would be unable to identify the seller.

The majority's dismissal of the evidence that Vara knew exactly what was in his car demonstrates a flawed approach to evaluating the evidence of knowledge in hidden compartment cases. We require additional circumstantial evidence, apart from control over the loaded vehicle, to prove knowledge, but that does not mean that such additional evidence must be equivalent to the level of evidence that would be required to prove knowledge beyond a reasonable doubt even in the absence of control, as, for example, against an accomplice charged with knowing possession who was not in the vehicle at the time the drugs were discovered. In other words, control of the vehicle, though not sufficient by itself, is still *some* evidence of knowledge, particularly where the

unwitting carrier presumption is made implausible by the circumstances of the suspect's control over the vehicle. When the majority concludes that "the evidence of generalized nervousness, the value of the marijuana, and Vara's travel to an Eagle Pass insurance agency the day before he left for Houston was, altogether, insufficient evidence for a rational jury to find beyond a reasonable doubt that Vara knew about the hidden compartments in the Monte Carlo," it demonstrates that it has erroneously counted possession for nothing.

"The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Lopez*, 74 F.3d at 577. Moreover, "[a]ll reasonable inferences must be drawn, and all credibility determinations made, in the light most favorable to the verdict." *United States v. Villareal*, 324 F.3d 319, 322 (5th Cir. 2003). The majority ignores these basic principles, reversing Vara's convictions precisely because, in its own view, the evidence did not "exclude every reasonable hypothesis of innocence." Because a reasonable trier of fact could and did conclude that the knowledge element of the charged crimes was proved beyond a reasonable doubt, I respectfully dissent.